STOVER BANK v. LOUIS WELPMAN, Appellant.—19 S. W. (2d) 740.

Division One, June 29, 1929.

236

*George W. Day* for appellant.

*A. J. Bolinger* for respondent.

LINDSAY, C.—In this case, at the close of plaintiff's evidence, the trial court gave the peremptory instruction offered by defendant, afterward set aside the involuntary nonsuit taken, and defendant appealed. Upon appeal, the Kansas City Court of Appeals ruled that the court erred in setting aside the involuntary nonsuit; but, deeming its decision to be in conflict with a ruling of the St. Louis Court of Appeals, transferred the cause to this court for determination.

The suit is upon a promissory note in the sum of $1100 executed on December 15, 1920, by the defendant, Louis Welpman, and payable to H. K. Welpman, one year after the date thereof. In September, 1923, H. K. Welpman borrowed money from the Merchants' Bank of Kansas City, Missouri, and executed his note therefor. On

January 7, 1924, the unpaid amount on said indebtedness was $1346, and on that date H. K. Welpman executed to Merchants' Bank his renewal note in the sum of $1346, and delivered the note herein sued on as collateral security. The new note thus given by H. K. Welpman to the Merchants' Bank recited the giving of collateral security in a lengthy agreement, incorporated in the note, wherein various terms and conditions were stated, concerning the rights of the holder of the note in and to the collateral. There was testimony to the effect that the original loan made by the Merchants' Bank to H. K. Welpman was made at the request of the cashier of the plaintiff bank, and under an agreement that plaintiff would take over the note of H. K. Welpman and pay the Merchants' Bank in full the amount that might be due on the obligation of H. K. Welpman. The plaintiff bank was a customer of the Merchants' Bank and had an account with that bank. In April, 1924, the officers of the Merchants Bank asked the plaintiff to take over the H. K. Welpman note. There was at that time due and unpaid on that note the sum of $969.59. That amount was charged to the account of plaintiff, and on April 9, 1924, the president of the Merchants Bank indorsed and delivered that note to the plaintiff, and with it, delivered the collateral—the note in suit. This indorsement and delivery was made without any meeting or action of the board of directors in respect to the transfer of said note. Both of said banks are organized under the laws of the State. The indorsement so placed upon the note ran as follows: "Without recourse, pay to the order of Stover Bank. Hal R. Lebrecht, Pres." Within a few months thereafter, H. K. Welpman paid to the plaintiff the balance due on the note, and at the time of completing payment demanded that the note herein sued on be delivered to him. At, and prior to, the time the Merchants Bank transferred and delivered the H. K. Welpman note and the collateral note, to the plaintiff, H. K. Welpman had become and was indebted to the plaintiff bank, through other transactions, in the sum of $5450. The plaintiff refused to deliver up the note herein sued on, and retained the same as and for collateral security for the payment of such other indebtedness. The note sued on shows its indorsement by H. K. Welpman, in blank. It contains a provision for the payment of an attorney's fee in the event of suit brought thereon.

The amended petition alleged that the note sued on was indorsed by the payee, H. K. Welpman, and delivered to the Merchants Bank as collateral security for the payment to the Merchants Bank of the note and collateral agreement executed by H. K. Welpman, and that "the note of this defendant together with the indebtedness of said H. K. Welpman was for value, by said Merchants Bank, indorsed over to and delivered to the plaintiff herein, and that plaintiff is the holder of the same for value under the collateral agreement of said H. K. Welpman."

The amended answer admitted the execution of the note sued on and denied all other allegations. It alleged that after the maturity of the note, and without defendant's knowledge, H. K. Welpman delivered the note to the Merchants Bank as collateral security for the payment of his note for $1346, and that thereafter, the note sued on, without authority, and illegally, was delivered to the plaintiff. The answer also set up an affirmative defense, not gone into upon the trial, and not necessary to be considered in the determination of the issue raised by the present appeal. There was a reply denying the facts set out in the affirmative defense.

It is claimed by defendant that the indorsement and delivery made by the president of the Merchants Bank was violative of the statute, Section 11762, Revised Statutes 1919, and void. If that claim be disallowed and the indorsement and transfer be held valid, carrying the collateral agreement embodied in the note to the Merchants Bank, it raises the question as to the right of the plaintiff to impress or hold the collateral—the note sued on—as security for the payment of the other indebtedness, due to the plaintiff from H. K. Welpman. The plaintiff claims that under the provisions of the collateral agreement the holder of the note for $1346, had the power to transfer any collateral held as security for the payment of that note, to any other obligation held against H. K. Welpman. Incidentally, also, there is discussed in the briefs the question of the right of the pledgee or holder of the collateral to realize upon the same by suit, rather than by sale of the collateral.

The plaintiff claims title to the note in suit, by the indorsement and delivery for value of the note owned by the Merchants Bank containing the collateral agreement for the benefit of its holder; and, under that agreement, claims the collateral note became pledged for the payment of other indebtedness held by the holder of the note.

The first statutory provision of this character appears in the Act of 1895, Laws of 1895, page 120. The act repealed Section 2759, Revised Statutes 1889, and enacted a new section which contained the provisions: "The cashier or any other employee shall have no power to indorse, sell, pledge or hypothecate any notes, bonds or other obligations received by said corporation for money loaned, until such power and authority shall have been given such cashier or other employee by the board of directors . . . and all acts of indorsing, *selling,* pledging or hypothecating done by said cashier or other officer or employee of said bank without the authority from the board of directors shall be null and void." In 1897 (Law 1897, p. 89) the section was again repealed and reenacted, so as to provide that the power and authority given to the cashier or other employee, should be given "in a regular meeting of the board, a written record

of which proceeding shall first have been made." This became Section 1112, Revised Statutes 1909. The provision as thus constituted remained unchanged until 1915. In 1915 there was another repeal and reenactment of the section, which became Section 90 of the Act of 1915 (Laws 1915, p. 146; Sec. 11762, R. S. 1919), as follows:

"The cashier or any other officer or employee shall have no power to indorse, pledge or hypothecate any notes, bonds or other obligations received by said corporation for money loaned, until such power and authority shall have been given such cashier or other officer or employee by the board of directors, a written record of which proceeding shall first have been made . . . and all acts of indorsing, pledging and hypothecating done by said cashier, or other officer or employee of said bank, without authority of the board of directors, shall be null and void."

The Act of 1915 made two changes. It omitted use of the words "sell" and "selling" and omitted the words "in a regular meeting of the board" theretofore included in the section. Section 80 of the Act of 1915 (Laws 1915, p. 140) became Section 11752, Revised Statutes 1919. It introduced certain requirements not theretofore made, and among other things provided as follows:

"The board of directors of each and every bank organized or doing business under this article shall hold a regular meeting at least once each month and keep a written record of its approval or disapproval of each and every purchase and sale of securities and each and every discount, loan, acceptance, renewal or other advance, including every overdraft in excess of $100, made since the last regular meeting of the board."

Prior to these amendments the Negotiable Instrument Law had been enacted (Laws 1905, p. 243). Therein were contained numerous sections defining or specifying the nature and various forms of indorsements—now Sections 818 to 830, Revised Statutes 1919. The provisions in said sections concerning restrictive indorsements and qualified indorsements were declaratory of principles theretofore recognized. In passing, it may be mentioned that Section 11762, Revised Statutes 1919, was also reenacted in 1927 (Laws 1927, pp. 216, 231) by adding the provision that "a certified copy of the resolution signed by the president and cashier, with the corporate seal annexed, shall be conclusive of the grant of such power." Otherwise, the section remained unchanged in respect to the provision herein involved.

It must be assumed that the Legislature had a purpose in 1915, in eliminating the words "sell" and "selling" and the words "in a regular meeting of the board." It must be assumed also, the Legislature in retaining the words "indorse" and "indorsing" was cognizant of the provisions of the then existing Negotiable Instru-

ments Law, and the definitions and provisions concerning indorsements therein contained, and the construction given to the prohibitive provisions by the courts. We do not conceive that the Legislature in amending the provision by eliminating the words "sell" and "selling," and retaining the words "indorse" and "indorsing" used the latter words in a literal and unrestricted sense. Does the elimination of the word "sell" and the words "in a regular meeting of the board," mean a maintenance of the inhibition undiminished, or mean a relaxation? Did the retention of the word "indorse" make the elimination of the word "sell" ineffective.

Section 824, Revised Statutes 1919, is as follows: "A qualified indorsement constitutes the indorser a mere assignor of the title of the instrument. It may be made by adding to the indorser's signature the words 'without recourse,' or any words of similar import. Such indorsement does not impair the negotiable character of the instrument."

The real question is whether the elimination of the words "sell" and "selling" removing the inhibition against the sale of a note, was rendered ineffective by the retention of the inhibition against indorsement of the note—an indorsement which made the indorser the mere assignor of the title to the note, and imposed no liability therefor.

We go somewhat farther in noticing the changes made by the Act of 1915. Section 80 of that act became Section 11752, Revised Statutes 1919, and was the successor of Section 1099, Revised Statutes 1909. Section 1099, Revised Statutes 1909, contained the requirement that the "board of directors shall meet at least once per month and pass on the business of the bank back to the previous meeting of the board, and shall keep a written record of the approval or disapproval of each and every loan." There was no requirement in that section that there should be an "approval or disapproval of each and every purchase and sale of securities," but that provision first appeared in the Act of 1915. There was, however, the provision that "no bills payable shall be made, and no bills shall be rediscounted by the bank, except with the consent of the board of directors." The last-named provision appears in Section 1284, Revised Statutes 1899, and was carried forward in Section 80 of the Act of 1915, now Section 11752, Revised Statutes 1919. We state the substance of the inhibition and requirements of the statute respectively before and after the Act of 1915 went into effect. Before, the officer could not "indorse, sell, pledge or hypothecate notes . . . received for money loaned," without he was first given power to do so, by the board, and the proceeding made a matter of written record, "in a regular meeting of the board;" and, there was then no requirement that at the monthly meetings there should be made

of record an approval or disapproval of the purchase and sale of securities. After the Act of 1915, the officer had no power to "indorse, pledge or hypothecate notes received for money loaned," without such power and authority had first been given by the board under a written record of the proceeding; and it was not required that such power be given in a regular meeting of the board; but it is now required (Sec. 11752) that a regular meeting of the board be had at least once each month, and that the purchase and sale of securities "since the last regular meeting of the board be approved or disapproved and a written record thereof made." In taking out the inhibition against the *sale* of a note, and taking out the requirement that the power to indorse, pledge or hypothecate a note must be given in a regular meeting, the Legislature, at the same time, in enacting Section 80 of the Act of 1915 (now Sec. 11752), made the additional requirement that there be an express approval or disapproval of record of any purchase or sale of securities made since the last meeting. Nothing was said of the requirement of an approval or disapproval of the indorsing, pledging or hypothecating of notes. If such action had been theretofore authorized by proper resolution, no approval or disapproval of the doing of what thus had been legally authorized, would have been necessary to the validity of the act done.

It has been stated in a number of cases, in substance, that the mischief which the Legislature had in view to correct, was the unauthorized dealings of officers and employees of the banks with the notes belonging to their principal. A number of cases, arising under the law as it was prior to the Act of 1915 enforcing the inhibition against unauthorized sales of notes, have been cited by counsel: Van Sandt v. Hobbs, 84 Mo. App. 628; Miles v. Bank, 187 Mo. App. 230, and others based upon the inhibition against selling. The discussion here is largely waged about the holdings in two cases decided by the courts of appeals. Defendant relies particularly upon the ruling of the Kansas City Court of Appeals in Bank of Kirksville v. Sloop, 198 Mo. App. 225. In that case, the sale of the note to the plaintiff bank was made by another state bank, under an indorsement "without recourse," and made after the Act of 1915 went into effect; but, the court founds its decision upon the terms of the statutes as it was in force before the Act of 1915, that is, upon the terms of Section 1112, Revised Statutes 1909. Through inadvertence the learned author of the opinion failed to note the changes made in Section 1112 by the Act of 1915, and at page 227 he sets out what is provided by Section 80 of the Act of 1915 (Sec. 11752, R. S. 1919). On the same page he repeats his former error, and says that Section 1112, Revised Statutes 1909, "is *rewritten* in the Law of 1915." Proceeding upon that erroneous assumption he says that Section 1099, Revised Statutes

1909, as amended by the Act of 1915, and now Section 11752, has no relation to or force upon Section 1112, or effect in the construction to be given to that section. The opinion holds at page 229, that the purpose of Section 80 of the Act of 1915, now Section 11752, "was plainly secured by applying it to a regulation of the operation of the bank and the duties of the officers as between themselves and the bank." In that case the transfer of the note was held to be a void act.

Taylor v. Fuqua, 203 Mo. App. 581, decided by the St. Louis Court of Appeals, is the other case much discussed. In the course of the opinion in that case, reference was made to Bank of Kirksville v. Sloop, and to the error in failing to note the omission of the words "sell" and "selling" from the Act of 1915.

In Taylor v. Fuqua, the plaintiff Taylor indorsed and delivered the notes sued on, of which Fuqua was the maker, to a state bank. The bank sued Fuqua and Taylor. The suit was dismissed as to Fuqua, and judgment taken against Taylor, and Taylor then procured a letter from the cashier of the bank to the circuit clerk in whose custody the notes were, directing the clerk to deliver the notes to Taylor, for the purpose of bringing suit thereon against Fuqua. The Court of Appeals held that transaction was not one within the inhibition of Section 11762, for several reasons: First, that they were not notes held by the bank for money loaned by the bank, but were notes acquired by the bank by purchase, and next, that the cashier in the transaction mentioned, "did not undertake to 'indorse, pledge or hypothecate' these notes." That perhaps, was decisive of the case, but in the course of the opinion the court, referring to the section then in force, Section 11762, said, l. c. 587:

"This section therefore, as it now stands, deprives a cashier merely of the power to indorse, pledge or hypothecate notes, etc., received by the bank for money loaned, without antecedent authority conferred by the board of directors; making any such act void. It does not purport to deprive the cashier of all power to sell notes or other obligations of which the bank may have title, in the ordinary course of business."

The conclusions respectively reached in the Sloop case and the Taylor case, are not authoritative either way upon the issue before us, for the reason that in the Sloop case the court founded its decision upon the old statute, and in the Taylor case, the facts distinguish that case from the case we have. We again refer to the provision contained in the present law, Section 11752, and which was also a part of Section 1099, Revised Statutes 1909, that is, the provision that "no bills payable shall be made, and no bills shall be rediscounted by the bank except with the consent of the board of directors." A rediscounted note is defined as follows: "A note held

by a bank, which it indorses and procures another bank to discount." [34 Cyc. p. 767.]

In the case at bar the note was one held by the Merchants Bank for money loaned; it was past due; it was indorsed by the Merchants Bank "without recourse;" it was sold but not rediscounted by the Merchants Bank, because not discounted by the Stover Bank; but, the full or face value of the note was charged to the account of the Stover Bank upon the books of the Merchants Bank.

The transaction between the Merchants Bank and the Stover Bank was merely and strictly a sale, a transfer of the property of the Merchants Bank in the note in consideration of the payment of the amount due upon the note at that time. An indorsement of that note was not essential to confer title upon the Stover Bank. As such purchaser and the real party in interest, the Stover Bank could have maintained suit on the note and enforced its payment without the indorsement. [Boeka v. Nuella, 28 Mo. 180; Willard v. Moies, 30 Mo. 142; Johnson v. Johnson, 81 Mo. 331; Davis v. Carson, 69 Mo. 609; Lipscomb v. Talbott, 243 Mo. l. c. 31; Goodman v. Freie, 214 Mo. App. 647; First National Bank v. Elmer, 278 S. W. (Mo. App.) 829.] The indorsement without recourse was merely evidence of the transfer from the one bank to the other of the property in the note, and of the fact that while it was negotiable paper, the assignor was not to be held for the default of the maker of the note. As the law stood prior to the Act of 1915, the act of selling a note without the specified authority therefor, was prohibited. The courts in the cases involving the sale without the specific authority, had enforced the statute in respect to sales, and the Legislature, in 1915, must be presumed to have made the change with knowledge of the construction given; and when they eliminated the act of selling from the list of acts prohibited, it must be assumed that they intended to change the law in that respect, and to lift the prohibition from the mere act of selling a note—a sale which was not a rediscounting, and imposed no liability upon the seller. We think this must be taken into consideration in construing the meaning of the words "indorse" and "indorsing" as used in the Act of 1915, and that the inhibition was not intending to extend to an indorsement which was evidence of a mere sale, which did not impose any obligation upon the bank which did not rediscount the note in the sense of abating interest— a transaction, which, in actual result, was the collection by the Merchants Bank of the amount due to it for the money loaned, and operated as an assignment and no more, of the title and rights of the payee, to the assignee. The use of the word "indorse" followed by the word "sell" in the statute as it was prior to the Act of 1915, necessarily forbade an indorsement which represented no more than a mere sale of a note, as well as an indorsement which left the bank

liable if the note was not paid by the maker upon due presentation. By the co-operation of the words used in the old statute, a mere assignment of the title of the note by a qualified indorsement, was a sale, and the sale was forbidden, and necessarily the indorsement was forbidden. Did the elimination of the word "sell" from the law as enacted in 1915, forbid the act of selling a note under the Act of 1915? Clearly, under the old form of the law, indorsing included a transfer which left the bank liable as an indorser if the note was not paid when duly presented, and equally clearly, by the use of the word "sell" there was also an inhibition against the act of selling—the mere transfer of the title by a qualified indorsement, so as to impose no liability on account of default of the maker. Did the omission of the act of selling from the statement of acts inhibited, serve to limit the meaning of the word "indorse," and inhibit the act of indorsing, if the indorsement constituted sale only? It is to be borne in mind that Section 80 and Section 90 of the Act of 1915, now Sections 11752 and 11762, were passed at the same time, as parts of one legislative act and in an endeavor to formulate a general scheme for the government of banks and of their officials and employees, in respect to the transaction done on behalf of the bank. The change evidenced by Section 90 of the Act of 1915, was a change made by the omission of words from the law as it formerly was. The change made in Section 80 of the Act was by the insertion of additional words, imposing requirements upon the board of directors, not theretofore specified. Section 90 eliminated the words "sell" and "selling," as applied to notes received by the bank for money loaned, and Section 80 laid upon the board of directors the new requirement of making a record at each regular monthly meeting of its "approval or disapproval of each and every purchase and sale of securities made since the last meeting." This fairly implies that there might be not only purchases, but also sales of securities made by the officers not theretofore expressly authorized by the board but required to be submitted for its approval or disapproval.

Under the foregoing conclusion it becomes necessary to consider the effect of the agreement as to the collateral, embodied in the note assigned by the Merchants Bank to the plaintiff. The question presented is whether the plaintiff, as holder of the principal note, became possessed of the right to the collateral note as security not only for the payment of the note assigned to it, but also for the payment of the other note held by plaintiff against H. K. Welpman at the time it became the holder of the assigned note. The first part of the agreement related particularly to the rights of the Merchants Bank as payee and while holder of the note; and it provides that any balance then on deposit with the Merchants Bank to the credit of any person liable on the note became a pledge to farther secure the

payment of the note, or any other obligation of such person; and that any funds or property thereafter deposited by such person with the Merchants Bank thereupon became immediately impressed with the same pledge. But the agreement continued, with certain clauses conferring additional and express rights applicable to any holder of the note, as follows:

"It is further agreed that any holder hereof shall have in addition to the rights above set forth, the right: To demand verbally or in writing additional or substitute security satisfactory to said holder, to be held subject to the same terms and conditions of this note as if originally deposited herewith, whenever said holder may before or after maturity for good or imaginary cause deem itself insecure; this note to become immediately due and payable at the option of the holder if the said demand is not met within twenty-four hours. Second. To hold the above collateral, or any substituted therefor, or added thereto, as security, both for this note and for any other obligation, of any person liable hereon, be the same due or to become due, or to be hereafter created. Third. To use, transfer or hypothecate at any time all securities however acquired. Fourth. To collect all dividends, interest and income on any collateral deposited herewith, or afterwards acquired by the holder hereof, and apply the same upon the obligations of any person liable hereon, when the same may in any manner be rendered due and payable. Fifth. In the event of the non-payment of this note or of any obligation of any person liable hereon when the same may in any manner be rendered due and payable, the holder hereof shall have the right: a. To immediately apply as a credit hereon any balance whether on deposit or otherwise with it standing to the credit of any person liable hereon. b. To acquire possession of any personal property of any such person or in which any such person has an equity or interest, to hold the same under the terms of this note, and to apply, the same or the proceeds thereof to the payment of this or any other obligation of any such person. c. To sell and convey any or all of the collateral in the possession of the holder however acquired, as against any or all of the liabilities of any such person, or cause the same to be sold at public or private sale, with or without notice or demand, and at such time or place, and upon such terms as the holder hereof may deem best (the holder hereof being authorized to purchase said collateral in whole or in part when so sold without any right or equity of redemption therefrom) and apply the proceeds of such sale: (1) toward the costs of such sale and any costs or expenses, including reasonable attorney's fee that may have been incurred in efforts to collect this note, or any other obligation above mentioned, (2) towards the amount then owed on this note, (3) to-

ward the obligations of other persons liable hereon, whether due or not."

Proceeding upon the theory that the plaintiff bank became the holder for value of the note assigned by the Merchants Bank, with the collateral thereto subject to the terms of the agreement, as to the collateral, the question arises upon the right of plaintiff to hold the note of the defendant in this suit as security for the payment of the note for $5450 held by the plaintiff against H. K. Welpman. Upon the question peculiar to the effect of the agreement as to the collateral, counsel for defendants have cited Hornsby & Munroe v. Knorpp, 207 Mo. App. 302. That case was one wherein the holder of the principal note undertook to use the collateral as security for other indebtedness under the terms of the collateral agreement incorporated in the principal note. The claim of the plaintiff was disallowed upon the ground that the rights given to the bank, the payee and assignor of the note under the peculiar terms of the agreement, were not available to the subsequent "holder or holders" of the principal note. It was held that at most the contract was ambiguous, and susceptible of two constructions, and that being true, the construction would be given which was the more favorable to the pledgor, in accordance with the rule stated, Dibert v. D'Arcy, 248 Mo. 617. It was held that unless the contract clearly and plainly so provided, a purchaser from the pledgee should not be accorded such extraordinary rights as the right to avail himself of the collateral for the satisfaction of other indebtedness due him from the pledgor. However, the court in its opinion referred to several cases wherein it was held that the contract as to collateral plainly did confer the unusual or extraordinary rights mentioned, and wherein the asserted right was upheld. Cases so holding cited by the Court of Appeals, are Richardson v. National Bank, 189 Mass. 25; Mulert v. National Bank, 210 Fed. 857, 127 C. C. A. 419; also Oleon v. Rosenbloom, 247 Pa. St. 250, 40 Ann. Cas. 233. In the Massachusetts case it was said the contract of pledge insured to the holder or holders of the original note, and applied to other indebtedness.

The contract here differs from that set out in Hornsby v. Knorpp. Under the contract here, as shown by what we have heretofore set forth, it was agreed that any holder of the principal note, in addition to the rights set forth peculiar to the Merchants Bank as payee, would have the right: "Second. To hold the above collateral or any substituted therefor, or added thereto, as security, both for this note and for any other obligations, of any person liable hereon, be the same due or to become due, or to be hereafter created." There is nothing ambiguous about the language just quoted. The right con-

ferred may be regarded as extraordinary and unusual, nevertheless "it is so nominated in the bond."

There is also the contention that the plaintiff cannot maintain a suit upon the note for the reason that the agreement provides that the collateral may be sold. This remedy, given by the agreement, cannot be held to be exclusive. "A special power to sell negotiable paper taken as collateral security upon default in payment of the debt is not exclusive of every other means of rendering the security available. The pledgee has a right to receive payment of such collateral paper and to enforce payment of it by action." [Jones on Collateral Securities, Pledges, (3 Ed.) sec. 651.] The note sued on was long past due. It bore the indorsement of H. K. Welpman in blank, and right of action thereon against the maker was authorized.

On the foregoing grounds we hold the court did not err in setting aside the nonsuit, and the order granting a new trial is affirmed. *Seddon, C.,* concurs; *Ellison, C.,* absent.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. *Atwood, P. J.,* and *Gantt* and *Ragland, JJ.,* concur; *Frank, J.,* not sitting.