MONTGOMERY WARD & COMPANY, Incorporated, on Behalf of Itself and All Other Foreign Corporations Licensed and Doing Business In Missouri, Whose Rights Are Affected in a similar Manner, Appellant, v. CHARLES U. BECKER, CHARLES U. BECKER, as Secretary of State, LARRY BRUNK, as Treasurer of the State, STRATTON SHARTEL, as Attorney-General of the State; DWIGHT H. BROWN, as Secretary of State, RICHARD R. NACY, as Treasurer of the State, ROY McKITTRICK, as Attorney-General of the State. —69 S. W. (2d) 674.

Court en Banc, February 21, 1934.

*Jones, Hocker, Sullivan, Gladney & Reeder, Fordyce, White, Mayne & Williams, Borders, Borders & Warrick, Sid C. Roach* and *Vincent L. Boisaubin* for appellant.

*Roy McKittrick,* Attorney-General, and *Edward C. Crow,* Assistant Attorney-General, for respondents.

HAYS, J.—On a hearing had upon an agreed statement of facts the Circuit Court of Cole County rendered its decree dismissing the bill brought by the plaintiff against the Secretary of State, the State Treasurer and the Attorney-General, to enjoin the collection of a privilege fee, or tax, as imposed by the Secretary of State upon the plaintiff, a corporation of the State of Illinois. The case is here on plaintiff's appeal.

The facts alleged in the bill are conceded by the defendants in the agreed statement to which reference has been made. So this appeal involves the sole question of the applicability of one statute (Sec.

4598, R. S. 1929) and the validity of another (Laws 1931, pp. 297-298,. relating to foreign corporations only), in pursuance of both of which such tax was attempted to be imposed.

In our statement of facts which follows we draw very largely from the statement as printed in plaintiff's brief. The Secretary of State, in imposing the fee, relied in part upon said Section 4598 (Laws 1927, pp. 390, 392, slightly modifying R. S. 1919, sec. 9792). Prior to 1927, in order to obtain a permit to do business in this State, a foreign corporation was required to pay a fee measured by the proportion of its capital stock represented by its property situated in Missouri and its business transacted in the State. By the Act of 1927 the Legislature changed Section 9792, Revised Statutes 1919, and provided that a foreign corporation applying for a license must pay a fee based upon the proportion of its *authorized* capital stock represented by its property and business in this State. The important modification was the added word "authorized." And this act, without change, was carried into the revision of 1929 and is now Section 4598 mentioned above. Said Act of 1931, supra, undertook to require every foreign corporation already licensed to do business in the State to do these things:

1. To file certified copies of all amendments to its charter.

2. To file an affidavit of its principal agent, whenever requested by the Secretary of State, showing the proportion of its *authorized* capital stock which is represented by its property located and business transacted in Missouri at any time after its qualification.

3. In the event the affidavit shows that the proportion of its *authorized* capital stock so represented has been increased since its qualification or since its last payment of qualification taxes, the corporation shall pay an *additional tax* based on all such increase as is required of domestic corporations when increasing capital stock, i. e., $5 for each $10,000 of such increase.

Failure to comply with any of the provisions of the act incurs the following penalties: (a) Forfeiture of charter or franchise to do business in the State, and (b) denial of the right to sue in the courts of the State.

The Secretary of State, in January, 1932, assuming to act under this statute and also under said Section 4598, requested the plaintiff to comply with said statutory provisions by filing an affidavit as specified therein. The plaintiff complied under protest. The affidavit so filed showed the capital structure of plaintiff's property and assets as of December 31, 1930. Pursuant to this affidavit and with the knowledge that plaintiff had long since become initially qualified and was afterward authorized to use $5,889,165 of its authorized capital stock in its business conducted in Missouri, the Secretary of State determined the proportion of plaintiff's authorized capital stock now represented in Missouri to be $21,581,784, which was an increase

of $15,692,619, and on which increase the fees were $5 for each $10,000 or part thereof and $1.25 for issuing certificate of increase. He accordingly demanded of plaintiff an additional tax of $7,850 and $1.25 for issuing the certificate of increase.

The capital structure of plaintiff had been changed from time to time prior to December 31, 1930, but as of that date, and ever since then, the total *authorized* capital stock of plaintiff was and now is 6,205,000 shares of which but 4,770,004 were *issued* and outstanding. All of the stock was of no par value, but of an actual value of $25.83 a share. As of the year ending December 31, 1930, plaintiff's total property located and business transacted everywhere was $417,167,514, while its property located and business transacted in Missouri was $14,509,620. The amount of the tax demanded ($7,850) was arrived at in the following manner: The Secretary of State put upon the total number of *authorized* no par shares, to-wit 6,205,000, a valuation of $100 a share, making the total value of plaintiff's *authorized* stock $620,500,000. Thereupon he applied to said total value and to the value of all of plaintiff's business transacted and to the value of plaintiff's property located and business transacted in Missouri, all as stated above, the arithmetical rule of three and arrived at the present proportion of the *authorized* capital stock of the plaintiff represented in Missouri, to-wit: $21,581,784. From this sum he deducted $5,889,165, as the previous proportion of plaintiff's stock in Missouri on which it had paid a tax, and on the claimed difference, or increase now in use in Missouri, viz., $15,692,619, assessed the tax as stated above.

As of December 31, 1930, plaintiff's total assets were $168,070,291 and its total assets in Missouri were $4,677,638.46; its total business transacted everywhere during the year 1930 amounted to $249,097,223, and its total business transacted in Missouri during that year amounted to $9,831,982.

All the business of plaintiff transacted during the year 1930, except the $9,831,982 transacted within Missouri, was either interstate business or business transacted wholly without the State and of a value of $239,265,241. Approximately three per cent of all of plaintiff's assets and property are located in Missouri and but four per cent of all of plaintiff's business is transacted within this State. Plaintiff declined to pay the tax and instituted this suit for relief by injunction.

With reference to the Act of 1927 (Sec. 4598, R. S.), the plaintiff takes the position that the act applies exclusively to the initial fee or tax payable by the foreign corporation as a condition to its admission into the State, and that it does not provide for any additional taxes in the event of the subsequent increase of the corporation's capital stock or its proportion of business or property in Missouri. The correctness of this position is not controverted by

the defendants. Indeed, it could not well be controverted, for a reading of the section discloses beyond question that the same applies to only the initial qualification fee or tax. Also, we think that the subsequent passage of the Act of 1931 is to be regarded as a legislative recognition of the limited scope and application of the section now under consideration; and that the act evidences a purpose to provide for the future and to affect those, and only those, foreign corporations theretofore "qualified to do business in Missouri," as specifically expressed in the act itself.

As a matter of law as applied to the facts in suit the principal and decisive question arises upon the attempt to impose the privilege tax now under consideration upon *authorized* and in part unissued capital stock. Relative to this the plaintiff insists that the Act of 1931, if it is to be given the interpretation put on it by the Secretary of State, violates the commerce clause, as well as the due process and equal protection clauses of the Fourteenth Amendment, of the Constitution of the United States.

The counsel for the defendant, with admirable and commendable frankness, concede in their brief the correctness of the plaintiff's position in this regard and cite as authority the leading cases that are cited by the plaintiff in support of that position. Our labor is thereby materially lessened in both its gravity and extent. And, fortuitously, it is also relieved of the usual incident of original discussion, since the Federal Supreme Court's construction or application of the provisions of the Federal Constitution invoked herein is, under the terms of that instrument, binding on this court. We shall look, then, to the decisions of that court and follow such as may be found to govern the case at bar.

Western Union Telegraph Co. v. Kansas, 216 U. S. 1, is the earliest case to which we are cited. It dealt with a Kansas statute that empowered the state authorities to require a foreign corporation to pay, as condition of its right to do local business in the State, a tax or fee upon its authorized capital. The case was ruled on the State's lack of power to impose upon a foreign corporation engaged in interstate commerce as a condition to its doing local business in Kansas a privilege tax, in any form or by any name, of a given per cent of its authorized capital, representing all its business and property everywhere. The court pointed out that such a tax would be a burden on the corporation's interstate commerce and its privilege to engage in that commerce, in that it would make both such commerce, as conducted outside the State by the company, and its property outside the State, contribute to the support of the State's institutions; that a State cannot tax property located or existing permanently beyond the State's limits. The court accordingly held that the statute was in contravention of the due process clause of the Fourteenth Amendment and the commerce clause of the Constitution of the United

States. [Citing Louisville, etc.; Ferry Co. v. Kentucky, 188 U. S. 385, 398; Union Transit Co. v. Kentucky, 199 U. S. 194, 199.]

The Western Union case was approved in United States v. Chicago, etc., Railroad Co., 282 U. S. 311, 329, as a supporting authority for the rule broadly stated in the latter case that "The right to continue in the exercise of a privilege granted by the State cannot be made to depend upon the grantee's submission to a condition prescribed by the State which is hostile to the provision of the Federal Constitution." It was also approved in Furst v. Brewster, 282 U. S. 493, 498, in respect of the Western Union case's supporting the principle that "Any state statute which obstructs or lays a direct burden on the exercise of the privilege of engaging in interstate commerce is void under the commerce clause." And later approved in Anglo-Chilean Corporation v. Alabama, 288 U. S. 218, with reference to a state's lack of power to tax a foreign corporation upon property that, by established principles, the State has no right to tax.

The last-cited case dealt with a state statute which authorized the imposition of a license fee upon a foreign corporation engaged in both local and interstate business. The court held the exaction of the fee to be illegal and void as illegally burdening interstate commerce and also as wanting in due process, because it laid a burden on property beyond the jurisdiction of the State.

Looney v. Crane, 245 U. S. 178, was a case wherein the statutes that were under consideration involved both a franchise tax (as in the Air-Way case, infra) and a permit tax (as here) based upon authorized stock. The court held that so taxing the property of a foreign corporation and its activities outside the jurisdiction of the State was in violation of the due process clause of the Fourteenth Amendment and of the commerce clause aforesaid.

Atlas Portland Cement Co. v. Massachusetts, 268 U. S. 203, and Cudahy v. Hinkle, 278 U. S. 460, ruled in the same way questions similar to those determined in the cases reviewed above. Air-Way Elec. Appliance Corporation v. Day, Treasurer, etc., 266 U. S. 71, was a case of the same nature as the others above and was similarly ruled with the exception that in this case the court further held that the tax violated also the equal protection clause of the Fourteenth Amendment. This case was approved in Roberts, etc., Co. v. Emmerson, 271 U. S. 50, 45 A. L. R. 1495, and in Hannover Ins. Co. v. Harding, 272 U. S. 494, 49 A. L. R. 713.

The earlier case of Baltic Mining Co. v. Massachusetts, 231 U. S. 68, not in harmony with the holdings in the decisions noted above, has been expressly disapproved by the Cudahy case and the Atlas Portland Cement Co. case above.

But further, discussion of the law of the case seems useless. From the decisions reviewed herein above it is evident that the tax

in question in the case at bar is invalid as being in violation of each of the three constitutional provisions mentioned above.

.. Other questions are briefed which, in view of the foregoing conclusions, we deem it unnecessary to consider. The decree, or judgment, of the circuit court is reversed and the cause is remanded with directions to that court to enter a judgment and decree for the plaintiff as prayed in the petition, enjoining the defendants from collecting or receiving said tax or fee, and from enforcing or attempting to enforce any penalty provided in said Act of 1931 for the nonpayment of said fee. All concur.