Samuel SALITAN and Irving Jacobs, doing business under the style and firm name of Credit Industrial Company, Appellants,

v.

CARTER, EALEY AND DINWIDDIE, a Corporation, Respondent.

No. 22902.

Kansas City Court of Appeals.

Missouri.

Feb. 1, 1960.

Harry T. Limerick, Jr., Columbia, for appellant.

Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, James W. Starnes, Alvin D. Shapiro, Kansas City, Missouri Bankers Association, amicus curiae.

Thompson, Mitchell, Thompson & Douglas, Robert Neill, William G. Guerri, St. Louis, St. Louis Clearing House Association, amici curiae.

Edwin C. Orr, Orr & Sapp, Columbia, for respondent.

HUNTER, Judge.

This is an action by Samuel Salitan and Irving Jacobs, alleged general partners, doing business as Credit Industrial Company, plaintiff-appellant, to recover from defendant-respondent, Carter, Ealey and Dinwiddie, a corporation, on three negotiable trade acceptances in the face amount of $1,544, and interest.

The case was tried to a jury. It was defendant's contention, among others, in its pleading and throughout the trial that Sterling Materials Company, Inc., the payee of the instruments, was a New York corporation and was not legally qualified to do business in Missouri; that it was unlawfully doing business in Missouri at the time of the sale of its material to defendant for which these trade acceptances were given; that those trade acceptances grew out of its unlawful business activity in Missouri and were void and invalid.

At the close of all the evidence the trial court directed a verdict for the defendant and plaintiff has appealed from the resultant judgment.

At the trial plaintiff adduced evidence to the following effect: Plaintiff is a limited partnership under the laws of the State of New York and does business only in that state. It is engaged in the business of buying negotiable instruments and carrying on the general business of a finance company.

The instruments sued on were dated December 15, 1953, and the named payee was Sterling Materials Company, Inc., a New York corporation. They were signed by defendant on that date, and were due on April 15, 1954, May 15, 1954, and June 15, 1954, respectively. They were transferred to the plaintiff for value on December 17, 1953, and plaintiff gave notice to defendant advising of the purchase and that defendant was looked to for payment.[1]

Defendant adduced evidence to the effect that Sterling Materials Company, Inc., was engaged in the heat and air-conditioning business and that defendant did business with it on numerous occasions.

In support of its defense that the instruments were void defendant then endeavored to show (1) that Sterling Material Company had an office in St. Louis, Missouri, at the time its contract with defendant was signed, (2) that the Sterlings' representative in Columbia called their St. Louis office for the material to be shipped from their St. Louis office to Columbia and (3) that the Sterling Material Co., Inc., is not authorized to do business in the State of Missouri. However, objection to this line of questioning on the ground that plaintiff was holder in due course, and that it was immaterial that payee was doing business in Missouri although unauthorized to do so, was sustained, and defendant, outside the presence of the jury, made it as an offer of proof to which the objection was again sustained.

At the close of the case the trial court, without stating the reason, sustained de-fendant's motion for a directed verdict, entered judgment accordingly, and, later overruled plaintiff's motion for judgment notwithstanding or in the alternative for a new trial.

It is plaintiff's contention as stated in its brief that "the only question before this court on this appeal is whether or not a holder in due course of a negotiable instrument, purchased from a foreign corporation not authorized to do business in the State of Missouri, can prevail." Defendant agrees to the extent that this is the principal question. We, therefore, address ourselves to that question.

In 1891 our legislature enacted a provision concerning nonlicensed foreign corporations, the relevant portion of which read: "* * * no foreign corporation as above defined, which shall fail to comply with this act, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of contract or tort; * * *." See, Laws of Mo.1891, Sec. 3, page 76; Mo.Rev.Statutes 1899, Sec. 1026.

Although this provision did not state specifically that all contracts made in this state by foreign corporations doing business in this state and not qualified to do business as required by the statutes of this state were void, nonetheless, the Missouri decisions construing this statutory section as it existed prior to 1931 interpreted it as making them "absolutely void". These early cases declared that as the statute established an absolute and unqualified bar to the maintenance of an action in our courts by such corporation illegally doing business in this state its contracts were void, and a transfer of them to third parties merely placed such third parties in the shoes of the transferor, i. e. the holder of a void contract. See, Booth v. Scott, 276 Mo. 1, 205 S.W. 633, 641; Flinn v. Gillen, 320 Mo. 1047,

---

[1]. In the original petition David Little was a named plaintiff but upon his death, with leave of court, the name of Irving Jacobs was substituted therein.

10 S.W.2d 923; Ehrhardt v. Robertson Brothers, 78 Mo.App. 404; German American Bank v. Smith, 202 Mo.App. 133, 208 S.W. 878; Tri-State Amusement Co. v. Forest Park Highlands Amusement Co., 192 Mo. 404, 423–424, 90 S.W. 1020, 4 L.R.A.,N.S., 688; United Shoe Machinery Co. v. Ramlose, 210 Mo. 631, 649, 109 S.W. 567. Accordingly, a subsequent compliance by the foreign corporation with the requirements of the chapter did not remove the void nature of the contract and no recovery could be obtained on it by a transferee. The rationale was that if the contract was void subsequent licensing or compliance with the law did not validate it, for a void act is no act and cannot be validated. Ehrhardt v. Robertson Brothers, supra; Keim v. Vette, 167 Mo. 389, 403, 67 S.W. 223, 227; Seneca Textile Corporation v. Missouri Flower & Feather Co., Mo.App., 119 S.W.2d 991.

In 1931 our legislature for the first time added to the above provision after the word "tort" the following words: *"While (such) requirement has not been complied with."* (Italics ours.) Laws of Mo., 1931, Sec. 2, page 298, Mo.R.S., 1939, Section 5074. In Montgomery Ward & Co., Inc., v. Becker, 334 Mo. 789, 69 S.W.2d 674, the Supreme Court held this act unconstitutional upon grounds not pertinent to any issue presently before us. In 1937 the act with the mentioned constitutional objection removed was again passed by the legislature and contained the mentioned words of the 1931 act "while such requirement has not been complied with." Laws of Mo., 1937, page 204; Mo.R.S., 1939, Section 5074.

In 1943 our legislature adopted a new corporation code. In it the quoted words were transferred and included in Section 109, Laws of Mo., 1943, page 469, which became Section 351.635, R.S.Mo.1949, V.A. M.S. We quote therefrom:

"* * * No foreign corporation, failing to comply with this act, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of the contract or tort, *while the requirements of this Act have not been complied with."* (Emphasis ours.)

This is the first case requiring an interpretation of the act as amended by the italicized language to reach an appellate court of this state. It necessarily merits thorough consideration.

It is the contention of defendant that an instrument, such as those before us, where given to a foreign corporation doing business in Missouri without qualifying is, under the statute as amended, still a void instrument, and thus, is not enforceable even by a bona fide purchaser for value.

Thus, our first question is whether under new Section 351.635 a contract or trade acceptance is void or whether it is merely unenforceable in Missouri courts until the foreign corporation complies with the requirements of the mentioned chapter.

■ We must, of course, construe the statute as it presently reads and not as it formerly read. Missouri cases construing the repealed section are no longer controlling on the question before us. Our purpose now must be to ascertain the legislative intent as expressed in the amended statute and in so doing we must take particular notice that the legislature has added eleven new words to the former section. These eleven words are plain and clear. Their purpose is unmistakable.[2]

■ It is our opinion that the quoted language, carried forward to and contained

2. Since the legislature is presumed to know the prior construction of the original act an amendment substituting a new phrase for one previously construed generally indicates that a different interpretation be given the new phrase as the old phrase as interpreted no longer expresses the legislative will. See, 1 Sutherland, Statutory Construction No. 1930 (3rd Ed.) 1943; Stover Bank v. Welpman, 323 Mo. 234, 19 S.W.2d 740, 742.

in the 1943 amendment, changed the prior law of Missouri to the end that contracts of nonlicensed foreign corporations are no longer "absolutely void" but rather under Section 351.635 are merely unenforceable until such time as the foreign corporation complies with the requirement of the mentioned chapter and that thereafter such contracts may be enforced just as may any other contract of a foreign corporation made at a time when such corporation was in full compliance with the requirements of the chapter.

In the 1943 amendment there is no absolute prohibition of the enforcement of the contract by action in any Missouri court. Rather, there is a prohibition of such enforcement only "while" the chapter is not complied with. To our minds this plainly means that the prohibition exists and applies only so long as the statute has not been complied with and that thereafter the bar on the maintenance of a suit or action is removed. The word "while" as used in the amended language connotes a change of right upon the change of conditions regarding compliance. As used it means that if after failing to comply with this chapter the requirements of this chapter have been complied with, then the foreign corporation "can maintain any suit * * * in any of the courts of this state * * *."

Respondent relies particularly upon the case of Hunter Packing Company v. Trinity-Universal Insurance Company, D.C., 98 F.Supp. 215. In that case Judge Wham compares the Illinois Business and Corporation Act, S.H.A. ch. 32, § 157.1 et seq., with the 1943 Missouri Corporation Act and concludes that if the Missouri Legislature had wanted to provide that the validity of contracts of foreign corporations should not be impaired by their failure to secure licenses they would have done so in language as clear as that used in the Illinois Act. In his opinion Judge Wham states that in the absence of any Missouri decision interpreting the newly added language he would not venture any interpretation contrary to the decisions prior to the statutory change.

We agree the Illinois Act clearly provides such contracts are not void. But that does not mean our Missouri Legislature must use the same language to obtain that result. No particular language is needed to change the law. It is only necessary that the legislative intent to do so be expressed. Nor does it matter that our law was changed by adding additional words instead of enacting an entirely new section.

We do not agree with Judge Wham's views and note that when the case then before him was later refiled in the St. Louis, Missouri, Circuit Court as Cause No. 32,-762, that court in an able memorandum opinion came to a different conclusion as to the effect of the amending language. We note also, that Mr. Justice Whittaker, while a Federal Judge for the Western District of Missouri, discussed the mentioned amendment and obviously viewed it in accordance with the interpretation we place upon it. Jerrold-Stephens Co., Inc. v. Gustaveson, Inc., D.C., 138 F.Supp. 11, 13–14; See, also, Commentary, 17 V.A.M.S., page 319.

We are further strengthened in our views by the support of decisions in other jurisdictions where similar statutes are involved. See, Annotation, 75 A.L.R. 444, 457, ff.

There is an additional factor that must be considered; namely, the effect of our Negotiable Instrument Law on such a situation as is presented on this appeal. The earlier cases, and it is upon them the defendant principally relies, were decided either before the enactment of our Negotiable Instruments Law or before the enactment of the language now contained in Section 351.635 and give no consideration to their effect.

It is one thing to deny access to our courts to the unlicensed foreign corporation until it becomes qualified to do business in the state, and quite another thing to deny access to the courts to an innocent holder in due course of a negotiable instrument who seeks to enforce it against its maker. A penalty might be imposed on the unli-

censed corporation for wrongfully doing business, and we note there is provision for such penalty in the Missouri Act. An injunction might issue against doing such unlicensed business. Access to the courts by the unlicensed corporation may be denied until there is compliance with the act. But to provide by judicial interpretation further penalties not provided in the statute against an innocent purchaser for value of an apparently negotiable instrument would seem unreasonable. Cf., Kraft v. Hoppe, 152 Minn. 143, 188 N.W. 162.

The generally accepted rule is that where the statute does not declare the instrument to be void, a holder in due course can recover against the maker on a promissory note made to the order of a foreign corporation although it has not complied with the statutory conditions to the right to do business in the state. Brannan, Negotiable Instruments Law, 7th Edition, pages 892–93; Washington-Dean Co., Inc., v. Crow Bros., Tex.Civ.App., 1 S.W.2d 914; Kraft v. Hoppe, supra; Modern Industrial Bank v. Taub, 134 N.J.L. 260, 47 A.2d 348; First Nat. Bank of Central City v. Utterback, 177 Ky. 76, 197 S.W. 534, L. R.A.1918B, 838; Northwest Thresher Co. v. Riggs, 75 Kan. 518, 89 P. 921; Outdoor Electric Advertising Co. v. Saurage, 207 La. 344, 21 So.2d 375; Spokane Merchants' Ass'n v. Olmstead, 80 Idaho 166, 327 P.2d 385; Niblack v. Seaberg Hotel Co., 42 N.M. 281, 76 P.2d 1156; Metropolitan Life Ins. Co. v. Kane, 7 Cir., 117 F.2d 398, 133 A.L. R. 1163; Portland Ass'n of Credit Men v. Earley, 42 Wash.2d 273, 254 P.2d 758; In re V-I-D, Inc., 7 Cir., 198 F.2d 392.

In 10 C.J.S. Bills and Notes § 502(b), p. 1105, it is expressed:

"If a negotiable instrument is given to a foreign corporation in a transaction which is illegal because of the corporation's failure to comply with the conditions precedent to the right to do business prescribed by statute, the illegality cannot be set up as against a bona fide purchaser for value without notice, except where the statute expressly declares contracts made in violation thereof void.

"The provision of the Negotiable Instruments Act that the maker of a negotiable instrument, by making it, admits the existence of the payee and his then capacity to indorse has been cited as the ground for the holding that it is no defense to an action by a holder in due course that the payee was a foreign corporation which had not complied with the laws of the state prescribing conditions for doing business."

In the Modern Industrial Bank v. Taub case, supra, it is stated, 47 A.2d at page 351: "If the statute does not, in terms, declare the instrument void, or render it unenforcible in the hands of a holder in due course, the rule of the Negotiable Instruments Act applies in all its vigor."

In 2 Daniel, Negotiable Instruments, Section 939 (Seventh Edition), it is stated: "A bona fide holder for value who has received the paper in the usual course of business is unaffected by the fact that it originated in an illegal consideration * * *. The law extends this peculiar protection to negotiable instruments, because it would seriously embarrass mercantile transactions to expose the trade to the consequences of having the bill or note passed to him impeached for some covert defect. * * * Thus, where a note given to a nonresident corporation is not enforceable in the hands of the corporation because of doing business in the state in violation of the law of the state, yet it may be enforced in the hands of a purchaser without notice, the statute not declaring such a note void * * *."

In Morgan v. Mulcahey, Mo.App., 298 S.W. 242, 246, this court after finding the sale of an automobile void because of a failure to deliver a certificate of title, stated: "There are some authorities holding that where a note is given upon a consideration declared absolutely void by stat-

ute, the maker can successfully defend against the note even though it has found its way in the hands of a holder in due course, but since the enactment of the Negotiable Instrument Law the better considered authorities, including that of (the) Springfield Court of Appeals, have held to the contrary. See Farmer's Saving Bank v. Reed, 192 Mo.App. 344, 348, 180 S.W. 1002, 1004, where the court stated: ' * * The better rule is that a negotiable instrument is valid in the hands of an innocent holder even though the consideration for the instrument arose out of some contract or transaction prohibited by law, unless that law in express terms or by necessary implication declares the instrument void.' See, also, 8 C.J. 766 to 769, and cases cited. The statute relied upon by the defendants does not declare void a note or other evidence of debt given in the sale of an automobile where no certificate of title changes hands. In the absence of any such provision in the statute, we must rule defendants' contention against them although there is no question but that the note was nonenforceable in the hands of the original parties. 8 C.J. 766."

We believe these statements to be both the generally prevailing and better reasoned view and we adopt it. Any other view would place the burden on Missouri business and banking institutions to investigate each and every payee and endorser on each and every instrument in order to determine whether a foreign corporation is unlicensed, and if so, whether it is or is not doing business in Missouri. Such a burden does not seem to be in accord with the basic purpose of the Negotiable Instruments Law.

Our Negotiable Instruments Law, Section 401.060, provides "the maker of a negotiable instrument, by making it, engages that he will pay it according to its tenor, and admits the existence of the payee and his then capacity to endorse." Section 401.057 thereof provides, "A holder in due course holds the instrument free from any defect of title or prior parties, and free from

defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

Section 401.058 provides in part that: "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it was nonnegotiable. * * *" Section 401.052 specifies who is a holder in due course. Whether a person is actually a holder in due course within the meaning of the Negotiable Instruments Act and can otherwise qualify for its benefits turns on the facts that are developed in the particular case.

Respondent under its Points 3, 4 and 5, asserts that plaintiff-appellant did not make a submissible case because it failed to prove (1) it was a holder in due course and (2) it was an existing limited partnership and entitled to recover. As respondent elaborates its position and as we understand it from reading the record, it does not really claim there was no evidence or insufficient evidence on these points, but rather that such evidence was improperly received because some of it was hearsay, some pure conclusions, some not the best evidence and for various other reasons. Respondent's complaints as to the rulings of the trial court on these admissibility of evidence rulings are quite numerous and if the case were tried again might not arise—certainly not as here presented. We shall not, therefore, attempt to pass upon them—question by question—objection by objection.

We believe the evidence *which the court received* was sufficient to require submission to the jury and precluded a directed verdict on this issue under this record. Hence, a new trial is necessary.

The judgment is reversed and the cause is remanded for a new trial. It is so ordered.

All concur.