The CHASE MANHATTAN BANK, N.A., Plaintiff-Appellant,

v.

GEORGE PONTIAC–OLDS–GMC, INC., Defendant-Respondent.

No. 45405.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 13, 1983.

William A. Mallory, Columbia, for plaintiff-appellant.

Jerome W. Seigfreid, Louis J. Leonatti, Seigfreid, Runge, Leonatti & Pohlmeyer, Mexico, for defendant-respondent.

SIMON, Presiding Judge.

Chase Manhattan Bank (Chase) appeals an order of the trial court of Audrian County sustaining George Pontiac-Olds-GMC, Inc.'s (George Pontiac) motion for a directed verdict. The trial court also sustained Chase's motion for a directed verdict as to George Pontiac's counterclaim, but no appeal was filed as to this order.

On appeal, Chase asserts three points of error contending that the trial court erred in: (1) granting George Pontiac's motion for a directed verdict because sufficient evidence was adduced to raise a jury question as to whether Chase or its assignor were doing business in Missouri in violation of § 351.570 RSMo 1978; (2) erroneously declaring and applying the law in that substantive evidence was adduced at trial showing that as a matter of law that neither Chase nor its assignor were doing business in Missouri in violation of § 351.570 RSMo 1978; (3) declaring and applying the law in that the assigned lease is not void and, therefore, Chase is a holder in due course and entitled to sue under Missouri law. We reverse and remand.

■ On appeal, reviewing the sustentation of George Pontiac's motion for a directed verdict at the close of all the evidence, we look to the pleadings to ascertain the facts at issue. Then we view all the evidence in a light most favorable to Chase, giving it the benefit of any and all reasonable inferences to be drawn from the evidence not in conflict with its theory of the case, disregarding George Pontiac's evidence except as it might aid Chase's case. *Grossman Iron & Steel v. Bituminous Casualty Corp.*, 558 S.W.2d 255, 258 (Mo.App. 1977).

Applying this standard the facts are as follows: On October 16, 1974, Scotti Com-

mercial Company and George Pontiac signed a lease whereby George Pontiac agreed to lease from Scotti Commercial Company one Scotti Bend-O-Matic pipe bending machine. The lease provided for sixty (60) monthly payments of $321.88 and further provided that the lease could be assigned without notice and the assignee would have all rights, powers, privileges and remedies of the assignor. The lease also stipulated that an assignee would not be liable for any of the obligations of the lessor under the lease and that the lessee would not be able to assert defenses against an assignee that the lessee would be entitled to bring against the lessor. On October 15, 1974, George Pontiac had entered into an exclusive dealership, trademark, and license agreement with Scotti Muffler Centers, Inc. Scotti Muffler Centers, Inc. is a wholly owned subsidiary of Scotti Commercial Company. Pursuant to the agreement, Scotti Muffler Centers, Inc. agreed to perform various services including: sales promotion, management counseling, furnishing a manual of procedures, current advice of dealer advancements, and paying 25% of yellow page advertising. Chase agrees that none of these services were performed by Scotti Muffler Centers, Inc. but admits that Scotti Muffler sent a representative to give training and instruction in the operation of the pipe bending machine.

A check for 5 lease payments was made in advance to Scotti Muffler Centers, Inc. Subsequently, on December 14, 1974, Scotti Commercial Company assigned the lease to Chase pursuant to an earlier agreement with Chase signed July 31, 1973. In consideration Chase paid $13,271.55 for the assignment of the lease with 55 installments remaining, totaling $17,703.40. George Pontiac made 33 payments to Chase. The last payment was received by Chase in September, 1977.

Chase filed a petition in the Circuit Court of Audrian County for 22 installments totaling $7,081.36, plus a late charge. In its petition, Chase alleges that it took the assignment from Scotti Commercial Company in good faith, for value without notice of any claims or defenses to the agreement, and is entitled to the money due under the lease.

George Pontiac filed a counterclaim alleging that it had entered into an exclusive trademark and license agreement with Scotti Muffler Centers, Inc. on October 15, 1974 whereby George Pontiac was to receive certain services relating to the leased equipment. George Pontiac asserted that these services were not performed and caused George Pontiac to suffer: (1) lost profits; (2) damages to its business reputation; (3) diminished future profits; (4) losses on business equipment which was purchased in reliance upon the agreement with Chase's assignor. George Pontiac prayed for $50,000 in damages, plus costs and attorney fees.

At the close of all the evidence, the trial court sustained George Pontiac's motion for a directed verdict and Chase's motion for a directed verdict as to George Pontiac's counterclaim. In support of the motions for directed verdict the trial court found that: (1) Scotti Commercial and Scotti Muffler were doing business in the State of Missouri; (2) that Scotti Commercial and Scotti Muffler's relationship is so close it is difficult to separate the act of one from the act of the other; (3) that the exclusive dealership, trademark and the equipment lease and the assignment were all signed at the same time; (4) Scotti Muffler is a wholly owned subsidiary of Scotti Commercial; (5) the decision of *Western Outdoor Advertising Co. of Nebraska v. Berbiglia, Inc.,* 263 S.W.2d 205 (Mo.App.1953), controls since this was not a sale but rather the collection of lease payments on property in Missouri and there was continued dealing with the leased property; (6) the assignment to Chase was made while Scotti Commercial and Scotti Muffler were doing business in the state; and (7) Scotti Commercial had no cause of action to assign because neither Scotti Commercial nor Scotti Muffler had registered as foreign corporations doing business in the state. In sustaining Chase's motion for a directed verdict as to George Pontiac's counterclaim, the trial court found that Chase was a holder in due course in

regard to the assigned equipment lease thereby precluding George Pontiac's counterclaim.

The primary issue on appeal is whether Scotti Commercial and Scotti Muffler were doing business in Missouri in violation of § 351.570 RSMo 1978 and if so, would that defeat the right of Chase to maintain a lawsuit in Missouri courts pursuant to the exception contained in § 351.570.2(8) RSMo 1978.

Section 351.635 RSMo 1978 provides that a foreign corporation doing business in Missouri and not registered in accordance with the provisions of § 351.570.1 RSMo 1978 is precluded from maintaining any suit or action in any of the courts of Missouri while the requirements of § 351.570 RSMo 1978 et seq. have not been complied with.

Further, § 351.570.2(8) RSMo 1978 provides, in pertinent part, that "a foreign corporation shall not be considered to be transacting business in this state, for the purposes of this chapter, by reason of carrying on in this state any one or more of the following activities:

    (8) Securing or collecting debts or enforcing any rights in property securing the same;"

The trial court concluded that the Scotti corporations were doing business in Missouri without complying with the state's foreign corporation registration statute. The standard used was whether there was "... continued dealing by the foreign corporation with the property after interstate commerce had wholly ceased, and whether that continued dealing was an isolated transaction or a continuing form of the business of the foreign corporation." *Western Outdoor Advertising Co. of Nebraska v. Berbiglia, Inc.,* 263 S.W.2d 205, 209 (Mo.App.1953).

■ The facts indicate a continuing relationship regarding the pipe bending machine. The Scotti corporations contracted to provide services with respect to the machinery after the machinery was delivered pursuant to the lease and subsequent to the assignment of the note to Chase. The decision of *Western Outdoor Advertising* is con-

trolling. The trial court correctly held that the Scotti corporations were doing business in the State of Missouri without registering as foreign corporations, but incorrectly concluded that the lease was void and Scotti Commercial Company had nothing to assign.

■ The ruling is in conflict with *Salitan v. Carter, Ealry and Dinwiddie,* 332 S.W.2d 11 (Mo.App.1960). In *Salitan,* the court ruled that the 1943 amendments to § 351.-635 RSMo 1978 changed Missouri law so that contracts of foreign corporations doing business in Missouri without registering pursuant to § 351.570 RSMo 1978 are no longer void, but merely unenforceable until the foreign corporation registers in compliance with the provisions of § 351.570 RSMo 1978.

■ Accordingly, the Scotti Commercial Company could have enforced the lease by bringing suit in Missouri courts after registering as a foreign corporation, even though it had not complied with the statute at the time the lease was executed. The logic of *Salitan,* therefore, would allow Chase to sue to collect a debt pursuant to § 351.570.2(8) RSMo 1978. The lease is not void, but merely unenforceable by Scotti Commercial Company without registering in accordance with Chapter 351.

The record does not indicate that the assignment to Chase was motivated by a desire to circumvent the provisions of § 351.570 RSMo 1978. Thus, the trial court erroneously declared and applied the law in sustaining George Pontiac's motion to dismiss at the close of all the evidence.

■ Finally, Chase contends that it is a holder in due course. We disagree. The lease does not satisfy the requirements of a negotiable instrument as provided by § 400.3–104 RSMo 1978, in that it does not contain an unconditional promise to pay and is not payable to order or to bearer. Section 400.3–302 RSMo 1978 coupled with § 400.3–102(e) RSMo 1978 defines a holder in due course as one who takes a negotiable instrument as set forth in § 400.3–104

**316**

RSMo 1978. Clearly, Chase is not a holder in due course.

Although the trial court dismissed George Pontiac's counterclaim against Chase on the basis of Chase being a holder in due course, we are not reviewing that order because George Pontiac has not appealed.

For the foregoing reasons, we reverse and remand for a new trial in accordance with this opinion.

STEPHAN and SATZ, JJ., concur.