(No. 36267.—

YELLOW CAB COMPANY *et al.*, Appellants, *vs.* THE CITY OF CHICAGO *et al.*, Appellees.

*Opinion filed November 30, 1961.*

LEE A. FREEMAN, ROBERT E. SAMUELS, and KIRK-LAND, ELLIS, HODSON, CHAFFETZ & MASTERS, all of Chicago, for appellant Yellow Cab Company, and JESMER AND HARRIS, and WILLIAM C. WINES, both of Chicago, (HOW-ARD ELLIS, and JOHN M. O'CONNOR, JR., of counsel,) for appellant Checker Taxi Company, Inc.

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN, JOHN TUOHY, LEONARD R. HARTEN-FELD, and ROBERT J. COLLINS, Assistant Corporation Counsel, of counsel,) for appellees.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

Plaintiffs Yellow Cab Company and Checker Taxi Company, Inc., brought an action in the superior court of Cook County for an injunction, declaratory judgment and other relief seeking to enjoin the enforcement of and to declare unconstitutional two taxicab ordinances passed by the city council of the city of Chicago on August 24, 1959. The trial court, upon a motion by defendants, dismissed the action and entered its decree, from which this appeal was taken to this court.

The validity of the ordinances being challenged by plaintiffs, and the trial judge having certified that the validity of the ordinances is involved and that the public interest requires an appeal be taken directly to this court, this appeal was taken from the trial court to this court under the pro-

visions of the Civil Practice Act. Ill. Rev. Stat. 1959, chap. 110, par. 75.

It is the theory of plaintiffs that the two taxicab ordinances of the city of Chicago of August 24, 1959, are unconstitutional in that they impaired the obligations of a contract between plaintiffs and the city of Chicago, deprived plaintiffs of property without due process of law, were in violation of certain requirements set forth in the December 22, 1937, taxicab ordinance and restricted plaintiffs' right to assign the licenses once received. The defendants contend that the ordinances are valid, that the plaintiffs are precluded on the basis of estoppel, *laches* and waiver, and that if the assignability provisions of the ordinances are invalid, the other provisions are separable and valid.

We have heretofore stated the history of the taxicab ordinances of the city of Chicago commencing with the ordinance passed on May 18, 1934, in the cases of *Yellow Cab Co.* v. *City of Chicago,* 396 Ill. 388, and *People ex rel. Hafer* v. *Flynn,* 13 Ill.2d 368.

The May 18, 1934, ordinance had no limitation as to the number of taxicab licenses that could be issued and vested in the Public Vehicle License Commission the authority to issue licenses, after hearing, as the public convenience and necessity required additional taxicab service. The ordinance set up certain matters which the commission shall take into consideration in determining the convenience and necessity of the public. The licenses issued under this ordinance were not assignable.

By 1937, the Public Vehicle License Commissioner had issued 4108 taxicab licenses under the 1934 ordinance: 2166 licenses were issued to Yellow Cab Company, 1500 licenses to Checker Taxi Company and 442 licenses to others. The operation of taxicabs in the city of Chicago in 1937 resulted in unprofitable operations to the drivers and to the licensees, and in strikes and other violence, which led to the passage of the December 22, 1937, taxicab ordinance, which de-

creased the number of taxicab licenses in the city of Chicago to 3000. Since the 4108 outstanding licenses did not expire until 1940, the 1937 ordinance could become effective only upon the voluntary surrender of 1108 of the outstanding licenses. The 1937 ordinance extended the expiration date of the outstanding licenses to December 31, 1945, if 616 taxicab licenses were surrendered, and if 1108 licenses were surrendered, to bring the total of outstanding licenses to 3000, the 1937 ordinance gave to the surrendering licensees priority to the number of licenses surrendered over other applicants in the event the public convenience and necessity required the issuance of additional licenses over the 3000. The additional licenses were to be authorized by general ordinance. Yellow Cab Company, under the 1937 ordinance, surrendered 571 of its licenses, Checker Taxi Company 500 licenses and other licensees surrendered the balance of the required reduction to bring the outstanding licenses to 3000.

In 1958, after publication and notice, hearings were had by the Public Vehicle License Commission to determine whether the public convenience and necessity required additional taxicab service in the city of Chicago. The hearings commenced on June 19, 1958, and ended July 24, 1958, at which hearings 3907 pages of testimony were taken, 136 exhibits introduced and 105 persons testified. The commissioner, on December 29, 1958, sent to the city council his written recommendations, concluding that the public convenience and necessity required additional taxicab service and recommended that the number of licenses be increased to 4600. The recommendations set forth the fact that in 1958 there had been issued 3000 taxicab licenses, as follows:

| | |
|---|---:|
| Yellow Cab Company | 1595 |
| Checker Taxi Company | 1000 |
| Public Taxi Company | 60 |
| Other Independents | 345 |

The report of the commissioner recognized the decision of this court in the case of *People ex rel. Hafer* v. *Flynn*, 13 Ill.2d 368, and recommended that the surrendering licensees under the 1937 ordinance be given priority over other applicants for the additional licenses to be issued (over 3000) to the extent of the number of licenses so surrendered. Yellow, therefore, was to receive 571 of the additional licenses, Checker 500 and Public Taxi Company 25. Yellow and Checker made timely applications for and received the number of surrendered licenses under the 1959 ordinances.

The city council, on August 24, 1959, passed the ordinance increasing the number of taxicab licenses for the city of Chicago to 4600 and found the increased number of licenses were required for the public convenience and necessity. The ordinance provided that the commissioner shall issue licenses (1) to those licensees who have licenses on the effective date of the ordinance (3000); (2) to those licensees who have surrendered their licenses under the 1937 ordinance; (3) to those applicants who applied for licenses and deposited their fees in 1958, and (4) the balance of the 4600 to other qualified persons who shall make application therefor. The second ordinance of August 24, 1959, imposed limited assignability and for all practical purposes made taxicab licenses issued under the 1959 ordinance nonassignable. The second ordinance also provided that more than 4600 licenses shall be issued only after hearing as to the public convenience and necessity for additional taxicab service and then by ordinance of the city council.

Plaintiffs urge that the August 24, 1959, taxicab ordinances of the city of Chicago are unconstitutional for the reason that they impaired the obligation of a contract between Yellow and Checker and the city of Chicago under the contract ordinances of 1934 and 1937 and that the ordinances deprived plaintiffs of property without due process of law. The argument can not be made that the first 1959 ordinances did not recognize the contractual right of Yellow and

Checker to be issued from the additional authorized licenses the equivalent number of the licenses surrendered by the licensees under the 1937 ordinance. This ordinance expressly recognized the priority rights, and Yellow and Checker applied for and received additional licenses to the equivalent of the number surrendered under the 1937 ordinance.

The argument is that the public hearings of the commission did not fulfill the requirements of the 1937 ordinance, were void and deprived plaintiffs of their property without due process of law for the reason that some of the witnesses who testified at the hearing were not required to be sworn and that there was no opportunity given for cross-examination.

The scope of the hearings conducted by the commissioner was to determine the convenience and necessity of the public for additional taxicab service. The hearings were legislative in character and the authority of the commissioner was to make recommendations to the city council for the enactment of an ordinance to increase the number of taxicab licenses if such were the case from the evidence presented. An investigatory legislative hearing, unlike a judicial or quasi-judicial hearing, is not bound to the formality of the law in the introduction of evidence. The ordinances themselves and the law generally do not require that testimony be taken under oath. The hearings are informal in their nature, and wide scope of interrogation and inquiry must be permitted. The conclusions of the commissioner do not result in a final order and there is no judicial review from the record of the hearings before the commissioner where the purpose of such hearings is to recommend legislative action. The city council to whom the recommendations are made may or may not follow the recommendations of the commissioner for proposed legislation. A hearing for recommendation to a legislative body cannot and does not pass upon or directly affect contractual rights of parties

who may be interested in the commissioner's recommendations. We are of the opinion that there is no merit in the point that an investigatory hearing for the purpose of recommending to a legislative body proposed legislation for the public welfare must abide by all of the legal formalities of a judicial inquiry or a quasi-judicial hearing of an administrative agency upon which record there is a right to judicial review.

The May 18, 1934, ordinance did not set forth a maximum number of licenses that the commissioner was authorized to issue and the commissioner, up to 1937, had issued 4108 taxicab licenses under its provisions. The ordinance provided that the Public Vehicle License Commission could issue any number of taxicab licenses, after a "hearing," by resolution wherein it was found that the public convenience and necessity requires additional taxicab service. The 1934 ordinance further provided that, in determining whether the public convenience and necessity required the licensing of any taxicab, the commission shall take into consideration certain enumerated factors. The ordinance further provided that the commission shall hold public hearings from time to time for the purpose of consdering any objections or evidence pertaining to the question of the public convenience and necessity for the issuance of licenses for taxicabs and also provided for notice of public hearings. The contractual ordinance of 1937, reducing the number of taxicab licenses to 3000 upon the voluntary surrender of 1108 existing taxicab licenses outstanding and to expire in 1940, not only provided for the contractual priority of the surrendering licensees to any additional licenses that may be issued in the future in excess of 3000 to the extent of the number of licenses surrendered but also took away from the commission the authority to issue taxicab licenses in excess of 3000. The 1937 ordinance provided that public hearings be held upon the question of the public convenience and necessity for the issuance of licenses for taxicabs, but pro-

vided that any licenses to be issued in excess of 3000 may be issued only when authorized by general ordinance of the city council. The commission's role in the conduct of the public hearings was therefore changed from the actual issuance of taxicab licenses under the 1934 ordinance, if it concluded after hearing that the public convenience and necessity required additional taxicab service, to that of conducting public hearings which had for their purpose under the 1937 ordinance an investigation to determine the needs of the public for taxicab service and to make recommendations for proposed legislation on that subject by the city council. The city council is under no obligation to follow the recommendations, but subsequently enacts an ordinance, if such should be the case, in accordance with the public needs as it shall find for taxicab service. The hearings conducted by the commissioner for the purpose of submitting his recommendations for legislation should be as informative and as broad as possible and all parties interested in such legislation should be given the fullest opportunity to present evidence before the commission which would aid the commission in coming to an informed opinion as to the public convenience and necessity for additional taxicab service. The testimony presented to the commission is not required to be under oath and to make such requirement might restrict the witnesses testifying as to general facts, as well as specific facts, which may be of great assistance to the commision in recommending proposed legislation. There is no appeal from the record as established by the commission in its recommendations. The commission cannot and does not enter any final orders as a result of the hearings conducted by it and neither the hearings nor its conclusions affect in any way the contractual rights of third persons. The commission's findings are merely advisory to the legislative body for proposed legislation. The legislative body, in turn, cannot be required and is not bound to follow the recommendations of the commission in any subsequent legislation. The

legislative body acts within its sole discretion and determines for itself the public convenience and necessity for additional taxicab service. There is no complaint in this case that the commission restricted the introduction of testimony before it in regard to the public convenience and necessity, and we must assume that all parties who might be affected by its recommendations were given the fullest opportunity to present to the commission evidence as to the public convenience and necessity so that the commission in turn could make its recommendations from an informed opinion. Proper notice having been given of the hearings, full opportunity having been given to any person who might desire to introduce evidence as to the issues, and the commissioner having stated in his recommendations that he considered in arriving at his recommendations "all of the factors enumerated in either Section 195 A-6 of the ordinance of May 18, 1934, or Section 28—22.1 of the ordinance of January 30, 1952, and the provisions of the ordinance of 1937," we find that the hearings of the commission were diligently and properly conducted and that plaintiffs' contractual and constitutional rights were not violated.

The hearings of the commission could not possibly affect the contractual rights of Yellow and Checker in this case. Neither party had the right under the ordinances of 1934 and 1937 to limit the number of taxicab licenses to 3000. The ordinances expressly reserved to the city of Chicago the right to increase the number of taxicab licenses if it was in the interest of the public to do so. The contract right of Yellow and Checker was to have priority if additional licenses were issued over all others to the extent of the number of licenses surrendered under the 1937 ordinance, *pro rata* with all other surrendering licensees. As we have observed, the first 1959 ordinance preserved such priority and involved no impairment of a contract which would render it invalid. The cases cited by Yellow and Checker are not controlling in that they involved administrative hearings from

which a judicial review could be taken from the record established before the administrative agency. Plaintiffs have cited no case where a legislative hearing was held void and subsequent legislation held unconstitutional because witnesses were not sworn at the time they gave evidence before the commission, which was conducting an investigation to recommend proposed legislative changes.

The contractual rights of Yellow and Checker under the 1937 ordinances did not extend to permit them to obligate the commission to legal formalities in the conduct of its investigation, nor did they have the right to restrict the type of investigation to be made to determine whether the public is in need of additional taxicab service. The surrendering licensees, under the 1937 ordinance were to be given priority to the extent of their licenses surrendered if additional licenses were issued. To determine the need of the public for additional taxicab service requiring the issuance of additional licenses, the commission, under the 1937 ordinance, was required to hold a public hearing, after due notice.

There is no complaint that plaintiffs were denied full opportunity of presenting evidence. Although plaintiffs state in their brief that they were denied the right to cross-examination, nowhere have they pointed out in the record that if such right existed, it was unreasonably withheld.

Plaintiffs next contend that the 1959 ordinances are void for the reason that the commission did not make specific findings as set forth in the 1934 ordinance in determining its recommendations of the public convenience and necessity for additional number of taxicabs. The commission's report stated that it considered in arriving at its conclusion all of the factors set forth in the 1934 and 1937 ordinances. While it did not make specific findings of fact on each of these factors, the 1934 and 1937 ordinances do not require it to do so. Since the commission's findings, being merely recommendations to the legislative body, are not binding nor final in any respect and are not subject to judicial re-

view, there would be no necessity for specific findings of fact as to each matter set forth in the 1934 ordinance.

Plaintiffs urge that the first 1959 ordinance is discriminatory and denies equal protection of the law. In this argument they assert that the ordinance, in authorizing the commission to issue licenses within the 4600 maximum to those persons who applied for license for the year 1958 and deposited the annual license fee, if such persons are qualified to receive a license, is discriminatory and therefore the ordinance is unconstitutional. Preferential granting of licenses is ordinarily valid if there are reasonable grounds for such preference. The 1959 ordinance allowed preferences to applicants falling in three general categories. The first preference as to the issuance of licenses within the 4600 maximum was granted to those who held outstanding licenses at the time of the effective date of the ordinance, which totalled 3000; the second preference was granted to those who voluntarily surrendered their licenses under the 1937 ordinance, to the extent of the number of licenses surrendered, in accordance with our decision in *People ex rel. Hafer* v. *Flynn,* 13 Ill.2d 368, and the third class of applicants to which the commission was authorized to issue licenses were those who applied for a license for the year 1958 and deposited the annual fee therefor; and, lastly, the commission was authorized to issue, if any licenses remained, to other qualified persons who would make applications therefor. It is our opinion that the preferences given were reasonable and for the protection of the public. The plaintiffs find themselves in the first two categories and enjoy the preferences which they now claim are discriminatory. They base their attack on the priorities given to other applicants who have been seeking licenses to operate taxicabs in the city of Chicago for a substantial period of time prior to the adoption of the 1959 ordinances. The ordinance merely gave these persons that right after the commission found that they were otherwise qualified and met with the provisions

of the 1959 taxicab ordinance. Certainly this preference to these persons, who were attempting to receive a taxicab license and who have applied for such licenses in 1958, if qualified, is not in itself an unreasonable discrimination nor did it deprive Yellow and Checker of the equal protection of the laws, and we hold that there is no merit in this contention.

Plaintiffs next contend that the second 1959 ordinance is unconstitutional, in that it denied licensees the right to assign their licenses, while the 1937 ordinance gave licensees the right of assignability. The ordinance prohibits assignability except that in the case of death or military service a license may be assigned to a natural person. Since corporations are eligible to receive licenses in the first instance but are eligible to become neither transferors nor transferees, there is an obvious discrimination against corporations and in favor of natural persons. Since the provisions in the ordinance which restrict assignability deny unreasonably equal protection of the laws to corporations, these provisions are unconstitutional. (*Liggett Co.* v. *Balridge,* 278 U.S. 105, 73 L. ed. 204.) However, these provisions are severable and do not render the remainder of the ordinance invalid. *Weksler* v. *Collins,* 317 Ill. 132; *People ex rel. Adamowski* v. *Wilson,* 20 Ill.2d 568.

Other points are raised and argued by plaintiffs for reversal but in the view we take on this appeal, it is not necessary to discuss them.

For the reasons stated herein, the decree of the superior court of Cook County is reversed in part and affirmed in part.

*Reversed in part and affirmed in part.*