(No. 51123.—

RONALD HOOVER *et al.*, Appellees, v. THE MAY DEPARTMENT STORES COMPANY, Appellant.

*Opinion filed October 2, 1979.*

94

Howard J. Trienens, Newton N. Minow, Henry L. Mason III, and Kirk B. Johnson, of Sidley & Austin, of Chicago, and Robert S. Allen and Frank P. Wolff, Jr., of Lewis, Rice, Tucker, Allen & Chubb, of St. Louis, for appellant.

Richard Shaikewitz, of Wiseman, Shaikewitz, Mc-Givern & Wahl, of Alton, Jerold S. Solovy, Richard T. Franch, Carter H. Klein, and Larry M. Wolfson, of Jenner & Block, of Chicago, and Neil Bernstein, of Clayton,

Missouri, for appellees.

Wilson & McIlvaine, of Chicago (Robert F. Forrer and Robert K. Olendzki, of counsel), for *amicus curiae* Illinois Retail Merchants Association.

MR. JUSTICE RYAN delivered the opinion of the court:

The circuit court of Madison County entered summary judgment in favor of plaintiffs, Ronald Hoover and Sheila Ruth, individually and as representatives of a class, against the defendant, May Department Stores Company, for violations of the Illinois Retail Installment Sales Act (Ill. Rev. Stat. 1973, ch. 121½, par. 501 *et seq.*), and the Missouri Retail Credit Sales Law (Mo. Rev. Stat. 1969, sec. 408.250 *et seq.*). The plaintiffs represent a class of credit purchasers from the defendant-owned Famous—Barr Stores. The defendant was enjoined from further violations of the acts and ordered to give notice to the members of the class, to pay back excess finance charges, to set aside a fund of $9 million, and to make an accounting to the court of finance charges collected from members of the plaintiff class. The court found no just reason to delay the appeal as to certain issues (58 Ill. 2d R. 304(a)), and since it was felt portions of the order were interlocutory, the court made findings pursuant to our Rule 308 (58 Ill. 2d R. 308) that substantially all of the content of its order involved questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation. The appellate court allowed defendant's motion for an interlocutory appeal and affirmed the judgment of the circuit court, with one justice dissenting. (62 Ill. App. 3d 106.) We granted the defendant's petition for leave to appeal.

The complaint, as finally settled in the trial court,

contained four counts against the defendant charging violations of the Illinois Retail Installment Sales Act, the Missouri Retail Credit Sales Law, the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1973, ch. 121½, par. 261 *et seq.*), and the Missouri Merchandising Practices Act (Mo. Rev. Stat. 1969, sec. 407.010 *et seq.*). It is clear from the order of the trial court that its decision was not based on the consumer fraud statutes of the two States, but was based solely on the Illinois Retail Installment Sales Act and the Missouri Retail Credit Sales Law. We therefore judge the correctness of the order entered by the standards of the two acts involved, and we do not consider the order in light of the two consumer fraud statutes.

Famous-Barr Department Stores are owned by the defendant, May Department Stores Company, and have operated in the St. Louis area since 1879. For nearly 60 years, Famous-Barr has distributed Eagle trading stamps to its customers. It is the method by which these stamps were issued that is questioned in this case. We need not detail the facts. Briefly, when a customer purchases an item for cash, he receives Eagle stamps at the rate of 100 for each $10 purchase. If the customer does not pay cash, he receives no stamps at that time, but if he pays his account within 30 days after billing, he receives a slip which can be exchanged for stamps. If he does not pay his account within that time, he receives no stamps. The stamps can be exchanged at any Eagle Stamp exchange point regardless of where the purchases were made. It is plaintiffs' contention that the failure to issue Eagle stamps to the last class of credit customers mentioned constitutes an additional charge which defendant has not disclosed to the customers and is a violation of the two retail credit sales statutes. The action seeks to recover the value of the trading stamps that this class of customers did not receive by virtue of paying for their merchandise in more than the

allotted time after billing. It is estimated that no single customer will receive more than $20.

Numerous issues have been raised in this court which we need not consider because we hold that, at the time covered by the complaint, a private cause of action could not be maintained under either of the statutes involved in this appeal.

We will first consider the Illinois act. Prior to 1968, the Illinois Retail Installment Sales Act made certain provisions for the consequences of violations of the Act. Section 17 provided:

> "Sec. 17. Failure to comply—Remedy of buyer. In case of failure of the seller or holder to comply with the provisions of this Act, the buyer has the right to recover from the seller or holder, as the case may be, an amount equal to the finance charge or 10% of the cash price if no finance charge is specified *** plus reasonable attorneys' fees." (Ill. Rev. Stat. 1965, ch. 121½, par. 240.)

In addition to authorizing a private cause of action, the Act, in section 20, provided that any person who wilfully and knowingly violated any provisions of the Act could be punished by a fine of not more than $500, and further provided that "[a]ny person violating any of the provisions of Sections 2 to 17, inclusive, *** is barred from recovery of any finance charge, delinquency or collection charge or refinancing charge ***." (Ill. Rev. Stat. 1965, ch. 121½, par. 243.) No provision was contained in the pre-1968 act for the enforcement of its provisions by the Attorney General or a State's Attorney.

In 1967 the General Assembly enacted a new retail installment sales act, which specifically repealed the Retail Installment Sales Act of 1957 as amended, but provided that the repealed act remain in effect as to transactions entered into before January 1, 1968. (Ill. Rev. Stat. 1973, ch. 121½, par. 533.) The 1967 act was approved July 26, 1967, and became effective January 1, 1968. The case now

before us does not involve transactions entered into prior to January 1, 1968.

The present act does not contain a provision authorizing a private cause of action by a buyer against one who violates the provisions of the Act similar to that contained in section 20 of the 1957 act. Thus, although the present act repealed the 1957 act and reenacted a substantial portion of the former act's provisions, it did not reenact the remedy provision creating a private cause of action in the buyer. The present act, however, does contain a provision for the enforcement of the Act by the Attorney General or a State's Attorney. As noted above, the 1957 act had no such enforcement provision. Section 30 of the present act provides:

> "Sec. 30. The Attorney General or the State's Attorney of any county in this State may bring an action in the name of the State against any person to restrain and prevent any violation of this Act. ***" (Ill. Rev. Stat. 1973, ch. 121½, par. 530.)

Also, section 31 of the present act (Ill. Rev. Stat. 1973, ch. 121½, par. 531) contains a penalty provision substantially the same as that contained in section 20 of the 1957 act set out above. Thus, under the present act, as under the 1957 act, the violations of the Act constitute a misdemeanor for which the seller can be punished, and the seller is prohibited from recovering any finance charge in connection with the retail installment sales contract. However, the new act, instead of leaving the enforcement to private actions, has vested in the Attorney General or a State's Attorney the authority to bring actions against violators to restrain and prevent violations.

In 1967 the General Assembly not only repealed the 1957 Retail Installment Sales Act and enacted a new one, but also it enacted legislation creating a new Motor Vehicle Retail Installment Sales Act, a new Sales Finance Agency Act, and adopted several amendments to the Consumer

Fraud and Deceptive Business Practices Act. These three new acts, and the amendments to the latter, are all interrelated and were all approved July 26, 1967. In fact, these changes were all made by a package of bills which were introduced in the General Assembly on the same day, January 4, 1967, all of which had the same principal sponsors. These bills had sequential Senate Bill numbers. The amendment to the Consumer Fraud and Deceptive Practices Act was contained in Senate Bill No. 25; the Sales Finance Agency Act was created by Senate Bill No. 26; the repeal of the 1957 Retail Installment Sales Act and the creation of the new act were accomplished in Senate Bill No. 28, and the Motor Vehicle Retail Installment Sales Act was provided for in Senate Bill No. 29. Two other related bills, which are not relevant to this case, were also contained in this package. Senate Bill No. 27 was related to Senate Bill No. 26 and provided for supervision of sales finance agencies. Senate Bill No. 30 amended the law concerning rates of interest. See 1967 Ill. Laws 2062, 2068, 2143, 2149, 2163, 2211.

The Motor Vehicle Retail Installment Sales Act (Ill. Rev. Stat. 1973, ch. 121½, par. 561 *et seq.*) provides in section 23 (Ill. Rev. Stat. 1973, ch. 121½, par. 583) for enforcement by the Attorney General or a State's Attorney in the same manner as section 30 of the present Retail Installment Sales Act. Section 24 of the Motor Vehicle Retail Installment Sales Act (Ill. Rev. Stat. 1973, ch. 121½, par. 584) contains the same penalty provisions for violations of the Act as are contained in section 31 of the present Retail Installment Sales Act (Ill. Rev. Stat. 1973, ch. 121½, par. 531). In neither act is there any provision authorizing a buyer to maintain a private cause of action against a violator.

The Sales Finance Agency Act (Ill. Rev. Stat. 1973, ch. 121½, par. 401 *et seq.*) was also a new act approved on July 26, 1967, as a part of the package of bills. It

specifically provides in sections 8.3, 8.4, 8.5 and 8.9 (Ill. Rev. Stat. 1973, ch. 121½, pars. 408.3, 408.4, 408.5, 408.9) that certain violations of the Retail Installment Sales Act and the Motor Vehicle Retail Installment Sales Act (including willful violations and fraudulent misrepresentations under either of the two acts) constitute violations of the Sales Finance Agency Act. Section 16 of that Act (Ill. Rev. Stat. 1973, ch. 121½, par. 416) provides that an individual who sustains loss as a result of an act of a sales finance agency violative of the Act may, in a civil action, recover the excess paid over the maximum time differential as limited by the Retail Installment Sales Act, or the Motor Vehicle Retail Installment Sales Act along with other provisions for recovery.

As noted earlier, Senate Bill No. 25 of this package of bills introduced on January 4, 1967, made certain amendments to the Consumer Fraud and Deceptive Business Practices Act. We are here concerned with sections 2E and 2F added by that bill. (Ill. Rev. Stat. 1973, ch. 121½, pars. 262E, 262F.) Section 2E, which was added to the Act, provides:

> "Any person who is regularly engaged in the business of providing or furnishing merchandise to consumers or in making loans to consumers and who has committed in any calendar year 3 or more violations, as determined in any civil or criminal proceeding, of the 'Consumer Finance Act'; the 'Consumer Installment Loan Act'; the *'Retail Installment Sales Act'*; the 'Motor Vehicle Retail Installment Sales Act'; 'An Act to revise the law in relation to the rate of interest ***'; 'An Act to promote the welfare of wage-earners by regulating the assignment of wages ***'; or 'An Act relating to wage deductions for the benefit of creditors ***' *** is guilty of an unlawful practice within the meaning of this Act. ***" (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 121½, par. 262E.)

Section 2F, which was added to the Act, provides:

> "Any person who is held in any civil or criminal

proceeding to have wilfully and materially violated any Illinois statutory provision regulating the extension of credit to borrowers or designed to protect the consumer purchasing merchandise in a credit, as contrasted from a cash, transaction is guilty of an unlawful practice within the meaning of this Act. ***" Ill. Rev. Stat. 1973, ch. 121½, par. 262F.

In 1968 the Consumer Fraud Act provided that, in an action for injunctive relief brought by the Attorney General, the court could also enter the necessary orders to restore to any person, any money or property which had been acquired by means of practices prohibited by the Act. (Ill. Rev. Stat. 1967, ch. 121½, par. 267.) It further provided that the provisions of the Act shall not bar any claim against any person who has acquired any money or property by means of a practice declared by the Act to be unlawful. (Ill. Rev. Stat. 1967, ch. 121½, par. 269.) In *Rice v. Snarlin, Inc.* (1970), 131 Ill. App. 2d 434, the appellate court noted that certain sections of the Act created liability of a violator to a consumer, and also noted the language in the two sections referred to above in this paragraph provides for the right of consumers to recover. The appellate court held that the legislature clearly intended that the consumer should have a private cause of action. In 1973 section 10a was added to the Consumer Fraud and Deceptive Business Practices Act. (Ill. Rev. Stat. 1973, ch. 121½, par. 270a.) This section specifically authorized private actions for damages and, in addition, authorized the prevailing party in such an action to recover reasonable attorney's fees and costs. The section also provided that the action must be brought within three years.

Summarizing, prior to 1968, a buyer could maintain an action against the seller, or a holder, for a failure to comply with the provisions of the Retail Installment Sales Act. After the 1967 legislative enactment of this package of bills, neither the new Retail Installment Sales Act, nor

the new Motor Vehicle Retail Installment Sales Act contained any provisions for a private action. However, if there are three or more violations of either act during a calendar year, as determined in a civil or criminal proceeding (Ill. Rev. Stat. 1973, ch. 121½, par. 262E), or if a person is held in a civil or criminal proceeding to have "wilfully and materially" violated either act (Ill. Rev. Stat. 1973, ch. 121½, par. 262F), such violations constitute violations of the Consumer Fraud and Deceptive Business Practices Act, and a private action may be maintained by the consumer under section 10a of that act (Ill. Rev. Stat. 1973, ch. 121½, par. 270a). Also, if a sales finance agency *wilfully* violates the Retail Installment Sales Act, or the Motor Vehicle Retail Installment Sales Act, or if there is a fraudulent misrepresentation of particular material or other aggravating circumstances specified in the statute, the buyer may maintain a private action against the sales finance agency. (Ill. Rev. Stat. 1973, ch. 121½, pars. 408.3, 408.4, 408.5, 408.6, 408.9.) No longer is there a statutory provision for the maintenance of a private action for a mere violation of the Retail Installment Sales Act. Such action can only be maintained when aggravated violations bring the conduct within the provisions of one of the other two consumer-protection statutes.

The repeal of the 1957 Retail Installment Sales Act, which contained a provision for private action, and the failure to include such a provision in the new act, are clear indications that the legislature intended that there be no right to maintain a private action for recovery under the new act. (See *People v. Jennings* (1954), 3 Ill. 2d 125; *City of Chicago v. Degitis* (1943), 383 Ill. 171; 1A Sutherland, Statute and Statutory Construction sec. 23.28 (4th ed. 1972).) This conclusion is strengthened when we consider that the General Assembly, in the course of repealing the 1957 act and enacting the new act, provided that certain aggravated violations would constitute violations of the

Consumer Fraud and Deceptive Business Practices Act and the Sales Finance Agency Act.

In *Teale v. Sears, Roebuck & Co.* (1976), 66 Ill. 2d 1, the question involved was whether a civil action for damages exists for a violation of the "age discrimination act" (Ill. Rev. Stat. 1975, ch. 48, par. 881 *et seq.*). The act did not expressly authorize a civil action for damages. The plaintiff, relying on *Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, argued that when a statute is enacted for the protection of a particular class of individuals, a violation of its terms may result in civil as well as criminal liability, even though no provision is contained therein for the maintenance of a civil action. This court, in *Teale,* rejected this argument and found from a consideration of the language of the act itself, as well as the provisions of other statutes, that the legislature did not intend that a civil action be maintained for a violation of the act.

As in *Teale,* we note that in other consumer-protection statutes the legislature, when it intended to create a private cause of action for violations, specifically created the right of action in the statute. In addition to the Consumer Fraud and Deceptive Business Practices Act and the Sales Finance Agency Act previously discussed, the Consumer Installment Loan Act provides for a recovery of certain specified amounts within two years for violations of the Act (Ill. Rev. Stat. 1965, ch. 74, par. 70). In "An Act to revise the law in relation to the rate of interest ***" the obligor is given a right of action to recover specified amounts within a stated period of time. (Ill. Rev. Stat. 1965, ch. 74, par. 6.) In "An Act to promote the welfare of wage-earners by regulating the assignment of wages, and prescribing a penalty for the violation thereof," the statute authorizes the employee and the employer to maintain a cause of action against one who violates the provisions of the Act. (Ill. Rev. Stat. 1965, ch. 48, par.

39.4c.) In "An Act relating to wage deductions for the benefit of creditors and regulating the issuance of deduction orders," a private cause of action is also authorized. Ill. Rev. Stat. 1965, ch. 62, par. 87.

The totality of the circumstances, including the expungement of the private cause of action from the prior act, the inclusion of the private action in similar acts, the introduction and passage of a legislative package of bills, and the inclusion of an array of remedies in this act, compels the conclusion that the General Assembly did not intend that a private cause of action be maintained under the present Retail Installment Sales Act.

Under the Missouri Retail Credit Sales Law in effect during the period covered by the complaint, there was likewise no express provision for a private action. The law, as then in effect, provided:

> "408.370. *Violation, penalty—effect on time and other charges—correction.*—1. Any person who shall knowingly violate any provision of sections 408.250 to 408.370 shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than six months or both.
>
> 2. Any person violating sections 408.260 to and including 408.330, except as the result of an accidental and bona fide error of computation, shall be barred from recovery of any time charge, delinquency or collection charge on the contract.
>
> 3. Notwithstanding the other provisions of this section, the failure to comply with any provision of sections 408.250 to 408.370 with respect to any retail time transaction may be corrected by the seller, or other person holding the retail time contract or account under a retail charge agreement, at any time after the execution thereof, but in any event not later than ten days after such person shall have been notified thereof in writing by the buyer, and, if so corrected, such person shall not be subject to any criminal penalty or civil forfeiture under sections 408.250 to 408.370 for such failure." (Mo. Rev.

Stat. 1969, sec. 408.370.)

However, in 1975 this section was amended. The italicized portion of paragraph 3 of the section set forth below was added by that amendment, and also paragraph 4 was added to this section by the amendment. Paragraphs 3 and 4 provide:

"3. Notwithstanding the other provisions of this section, the failure to comply with any provision of section 408.250 *and sections 408.260* to 408.370 with respect to any retail time transaction may be corrected by the seller, or other person holding the retail time contract or account under a retail charge agreement, at any time after the execution thereof, but in any event not later than ten days after such person shall have been notified thereof in writing by the buyer, and, if so corrected, such person shall not be subject to any criminal penalty, civil forfeiture, *or private cause of action under sections* 408.250 to 408.370 for such failure. [Emphasis added.]

4. Any buyer, who suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment of any method, act or practice in violation of section 408.250 and sections 408.260 to 408.370, which is not restored by action taken pursuant to subsection 3 of this section, may bring a private cause of action pursuant to section 407.025, RSMo." Mo. Rev. Stat. 1979, secs. 408.370(3), (4), as amended in 1975.

Thus, prior to 1975, the Missouri statute provided for no private cause of action for a violation of the Missouri Retail Credit Sales Law, whereas, after the 1975 amendment, a private cause of action is provided for. Therefore, if the plaintiffs have a right to maintain a civil action in this case under the Missouri statute, the right to do so must be by implication. No case has been cited to us in which a Missouri court has construed this statute as authorizing a private action by implication. In Missouri the courts have regularly held that a "statute which creates a criminal offense and provides a penalty for its violation, will not be construed as creating a new civil cause of action independently of the common law, unless such appears by

express terms or by clear implication to have been the legislative intent." (*Christy v. Petrus* (1956), 365 Mo. 1187, 1192, 295 S.W.2d 122, 126; *Giloti v. Hamm-Singer Corp.* (Mo. 1965), 396 S.W.2d 711; *Aluma Kraft Manufacturing Co. v. Elmer Fox & Co.* (Mo. App. 1973), 493 S.W.2d 378.) In *Seasongood v. K & K Insurance Agency* (E.D. Mo. 1976), 414 F. Supp. 698, the Federal district court, interpreting Missouri law, refused to imply a private cause of action into the insurance code of Missouri, though the act allowed administrative orders and judicial review. As the court noted:

> "Nowhere in the Act is there a provision for a private action whereby an aggrieved person could enforce the Act, and plaintiff concedes that no private cases have been brought under the Act. There is a clear line of Missouri cases which holds that a statute which creates a criminal offense and provides a penalty for its violation will not be construed as creating a new civil cause of action independent of common law, unless such appears by clear implication to have been the legislative intent. [Citations.] Although the above cases involve criminal statutes, the principle they express is clearly analogous to the penal statute at issue here. Since nothing in the Act itself or its legislative history suggests the creation of a private right of action ***, Count III does not state a claim under Missouri law." *Seasongood v. K & K Insurance Agency* (E.D. Mo. 1976), 414 F. Supp. 698, 703.

We note that in other related consumer statutes the Missouri legislature, when it intended to provide for a private cause of action, expressly did so. In the Merchandising Practices Act, which is comparable to our Consumer Fraud and Deceptive Business Practices Act, the Missouri legislature provided in detail for maintaining civil actions

for damages, including class actions, for violation of that act. (Mo. Rev. Stat. 1979, sec. 407.025, as amended in 1973.) Also, with regard to usury, the Missouri legislature provided that a violator of the statute "shall be subject to be sued, for any and all sums of money paid in excess of the principal and legal rate of interest of any loan, by the borrower *** and shall be adjudged to pay the costs of suit, including a reasonable attorney's fee ***." Mo. Rev. Stat. 1969, sec. 408.050.

These considerations, which indicate the absence of legislative intent to create a private cause of action under the Missouri act prior to the 1975 amendment, are supported by general principles of statutory construction involving amendments. Legislative enactments creating new rights presumptively are intended to change the law in relation to those rights. (*Stover Bank v. Welpman* (1929), 323 Mo. 234, 19 S.W.2d 740; *Armor v. Lewis* (1913), 252 Mo. 568, 161 S.W. 251; 1A Sutherland, Statutes and Statutory Construction sec. 22.30 (4th ed. 1972).) In the absence of any Missouri authority to the contrary, we will apply what we perceive to be the proper construction of the Missouri statute. We hold therefore that there existed no implied right to maintain a private civil action under the Missouri Retail Credit Sales Law. We therefore hold that the trial court erred in entering summary judgment for the plaintiffs for violation of the Illinois Retail Installment Sales Act and the Missouri Retail Credit Sales Law.

We noted earlier that the complaint also alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, and of the Missouri Merchandising Practices Act. Plaintiffs' motion for summary judgment also encompassed these counts of the complaint. Although the court's order alluded to violations of these acts, the adjudicating portion of the order held only that the defendant had violated the Illinois Retail Installment Sales

Act and the Missouri Retail Credit Sales Law, and relief was granted only as to those two acts. The subsequent modification of the order, pursuant to our Rules 304(a) and 308 (58 Ill. 2d Rules 304(a), 308), to allow an interlocutory appeal, pertained only to paragraphs 1 through 5 of section VII of the order. These paragraphs— and, in fact, the entire section—do not contain any reference to the two consumer fraud acts. Thus, no appealable order was entered under these two acts, and the case must be remanded to the circuit court of Madison County.

The judgments of the circuit court of Madison County and of the appellate court are reversed and the cause is remanded to the circuit court of Madison County.

*Reversed and remanded.*