ANTHONY N. CHIRIKOS, Plaintiff-Appellant, v. YELLOW CAB COMPANY et al., Defendants-Appellees.

First District (1st Division)   No. 79-288

Opinion filed June 16, 1980.—Rehearing denied September 15, 1980.

Liebling, Hauselman & Miller, Ltd., of Chicago (Martin F. Hauselman, of counsel), for appellant.

Sonnenschein, Carlin, Nath & Rosenthal, of Chicago (Kenneth H. Hoch and David C. Jacobson, of counsel), for appellees Yellow Cab Company and Checker Taxi Company, Inc.

William R. Quinlan, Corporation Counsel, of Chicago (Robert R. Retke and Philip L. Bronstein, Assistant Corporation Counsels, of counsel), for appellee City of Chicago.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Anthony N. Chirikos (plaintiff) filed a class action for restitution from various taxicab companies (defendants), licensed by the city of Chicago (City), on the theory that the city ordinance dealing with taxicab rates, as amended on July 13, 1977, was illegal and should be rescinded. Plaintiff sought refunds from defendants of various alleged overcharges collected by them. Motions to dismiss plaintiff's amended complaint were filed by defendants and by the City. Extensive memoranda of law were filed by the parties. The trial judge filed an opinion granting the motions to dismiss and entered such an order. The order also denied plaintiff's leave to file a further and amended complaint. Plaintiff has appealed.

In this court plaintiff contends the fare increase amendment was illegally enacted in violation of the Chicago Taxicab Ordinance and in adopting this amendment the city council exercised an administrative function; the amendment violates the Illinois Consumer Fraud and Deceptive Practices Act; and the concerted efforts of defendants in seeking the fare increase amendment violated the Illinois Anti-Trust Act.

Plaintiff's amended complaint contains four counts. Count I alleged the status of plaintiff as a taxicab rider and defined the class as all persons who have paid taxicab fares to any City licensee after July 13, 1977. Plaintiff alleged, on information and belief, in obtaining a fare increase the taxicab companies submitted statements of gross revenues and expenses which "contained irrelevant, erroneous, unreasonable and unjust information" in violation of the requirements of the ordinance. The City has failed or refused to require defendants to submit a sworn statement of all gross fares collected. Count I prayed the amendment be declared unlawful, its operation enjoined and all unlawful fares be refunded.

Count II alleged the City and defendants had deceived plaintiff and other members of the class in contravention of the Illinois Consumer Fraud and Deceptive Business Practices Act. Ill. Rev. Stat. 1977, ch. 121½, par. 261 *et seq.*

Count III alleged two of the defendants acted in concert to obtain an unjustified and illegal rate increase. This count has not been briefed or argued by plaintiff.

Count IV alleged the matters pleaded in counts I and II were a violation of the Illinois Antitrust Act. Ill. Rev. Stat. 1977, ch. 38, par. 60—1 *et seq.*

■■ The pertinent facts alleged in plaintiff's complaint and contained in exhibits attached thereto are accepted as true in ruling upon a motion to dismiss. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 284, 402 N.E.2d 599.) For some time prior to July 13, 1977, the applicable City ordinance provided specific rates of fare for taxicabs. The ordinance declared these rates to be "just and reasonable."

The ordinance provided when the combined total of all operating expenses of the licensees for a period of 12 consecutive months would approximate 86 percent of their combined gross fares for the period, the rates were to be "deemed just and reasonable." The ordinance provided for revision of the rates upon application to the council by the holders of not less than a majority of the taxicab licenses. The committee on local transportation of the city council was then to hold a hearing to determine the need for a fare adjustment. Each licensee was to submit "a sworn statement of all gross fares collected and of all such expenses incurred during the immediately preceding period of 12 full calendar months."

This information was to be reported by the committee to the city council. Using the same guideline, the council was then, where increase of fares was indicated, to increase the rates by 5 cents per trip for each one and one-half percent portion of such excess of expense over 86 percent. In addition, if the combined total of such expenses was less than 86 percent of the combined gross fares, the council was to decrease the rates of fare by the same proportion or could allow the fares to remain unchanged and authorize additional taxicab licenses at the same percentage per portion.

By letter dated June 6, 1977, the licensees applied for a fare increase. The council referred the matter to its committee on local transportation. Conferences and meetings were held and defendants Yellow and Checker submitted statements of their gross revenues and expenses during the preceding 12-month period. Plaintiff alleged, by way of conclusion, this statement "contained irrelevant, erroneous, unreasonable and unjust information." Plaintiff alleged the statement of gross revenues thus submitted was a "direct violation" of the ordinance requirements. Plaintiff alleged these defendants failed, or refused, to submit a sworn statement of gross fares and the City had failed, or refused, to require this compliance with the ordinance.

The committee voted 11 to 1 to recommend a proposed increase to the council. On July 7, 1977, the council received this report. On July 13, 1977, the city council enacted an amendment to the taxicab ordinance. This amendment increased rates of fare for the first one-tenth of a mile or fraction thereof from 50 cents to 85 cents without changing other existing fare requirements.

On November 22, 1977, the city council by resolution directed the chairman of the committtee on finance to appoint a special committee to conduct a review of the financial data presented to the committee on local transportation in support of the ordinance of July 13, 1977. Pursuant to that resolution the special committee retained the services of special legal counsel. A copy of the report of counsel to the special committee, dated March 15, 1978, was presented to this court as an appendix to plaintiff's

brief. We take judicial notice of this report and of other public records involved here. *Finish Line Express, Inc. v. City of Chicago* (1978), 72 Ill. 2d 131, 136, 379 N.E.2d 290.

The attorney concluded the data originally submitted to the committee on local transportation did not comply with the then existing ordinance. The report found not all licensees had submitted data. The statements submitted were not sworn and all expenses were not identified. The counsel also found that the expenses incurred by defendants were shown in the aggregate whereas the ordinance provided only for a showing of operating expenses. Proper data as to gross fares was not submitted because a significant number of taxicabs are leased and, as to these cabs, the figures presented reflected gross income from lease rentals and not gross fare revenues from meters. The special counsel also concluded supplemental data submitted to the council were not consistent with the original data since changes were made by the defendants "in depreciation policies and in the reserves for insurance losses which do not appear in the original data."

Another appendix to plaintiff's brief in this court is a report from a firm of certified accountants engaged by the special committee on taxicabs of the city council pursuant to the council's resolution. This report, dated April 18, 1978, reflects the result of a review of the financial records of defendants Checker and Yellow by the accountants. The report considered a detailed audit made by another prominent firm of certified accountants relating to the financial statements of defendants Checker and Yellow and other associated companies. The report concluded, "while the city council, being a legislative body, may have construed gross revenues to be the same as gross fares, the fact remains that the taxicab companies did not provide the gross fare data for the leased cab segment of their operations." However, the report also stated defendants, Yellow and Checker, did operate at a loss during the 12-month period ending May 31, 1977. This loss was actually greater than that reflected by the data they submitted. This report illustrated graphically the complications resulting from the new system of leasing taxicabs to drivers. The report stated, "Therefore, it appears to us that a fare increase of some measure was economically justified."

The able trial judge supported his order dismissing the amended complaint with a lengthy and well-reasoned memorandum opinion and ruling.

## I.

Plaintiff's first contention is the fare increase amendment enacted on July 13, 1977, violates the requirements and procedures of the then

pending taxicab ordinance. Plaintiff cites the conclusions reached by the special counsel and the accounting firm concerning failure of defendants to provide proper gross fare data as regards leased taxicabs. Plaintiff urges he has been denied due process of law because of failure of the city council to act in accordance with established legal requirements enacted by the council.

■▌■ In considering this contention, we must first make our position and authority clear. This court cannot handle matters which in effect are attempts to overrule decisions of a legislative body based upon alleged failure to follow requirements imposed by that body itself. This court may not act to invalidate legislation simply upon considerations of what litigants, attorneys or this court may regard as the public welfare. We have authority to invalidate legislation adopted by the city council only upon grounds that the enactment violates a provision of the Federal or State constitutions or violates the mandate of a State or Federal statute. Our supreme court has stated the matter succinctly: "⁕ ⁕ ⁕ it is not the function of the judiciary to pass upon the wisdom of legislative action." (*Finish Line Express, Inc.*, 72 Ill. 2d 131, 138.) As the learned trial judge noted in his opinion, courts have no legal power "to correct what amounts to an alleged error of judgment on the part of a legislative body."

In previous litigation involving the necessity for an increase in the number of taxicabs, the supreme court held that the city of Chicago and the city council were not bound by determinations made by the Public Vehicle License Commission regarding the number of taxicabs. Despite a general claim by the taxicab companies of lack of due process of law in an ordinance increasing the number of taxicabs, the supreme court held the city council was under no obligation to follow recommendations of the commission but the council had legal right to act in accordance with the public needs as it construed them. The supreme court described the situation as follows (*Yellow Cab Co. v. City of Chicago* (1961), 23 Ill. 2d 453, 460-61, 178 N.E.2d 330):

> "The commission's findings are merely advisory to the legislative body for proposed legislation. The legislative body, in turn, cannot be required and is not bound to follow the recommendations of the commission in any subsequent legislation. The legislative body acts within its sole discretion and determines for itself the public convenience and necessity for additional taxicab service."

■■ We therefore disagree with plaintiff's contentions. The city council was not bound by its own previous ordinances or requirements. The council had clear right to repeal the then existing ordinance or to amend it as it saw fit.

The binding force of this principle is evidenced by the fact that the pertinent ordinance (section 28—30(b) of the Municipal· Code of

Chicago), is no longer in existence. On September 26, 1979, the city council adopted a comprehensive amendment to that ordinance and enacted a totally new section. This section provides the council may revise the rates of fare by general ordinance. After application by a majority of licensees, but not more often than once a year, the city council, by its committee on local transportation, is to hold hearings based upon a sworn statement of all gross income derived from the operation of all licensed taxicabs and all expenses incurred. At such hearings the committee shall also consider testimony from any licensee; effect of an increase of fares on the public; testimony from any interested individual or organization; fares and practices in other American cities; and all other evidence the committee deems relevant and material. The committee is then to report its findings and recommendations to the council. If the council concludes a rate increase is proper, it shall adopt an increase sufficient to insure adequate and efficient service to the public.

■■ Plaintiff further argues, however, that in adopting the ordinance of July 13, 1977, the city council was discharging an administrative rather than a legislative function. Plaintiff contends the language of the ordinance is clear and the council has actually performed simply a matter of mathematical calculation which amounts to an administrative task. We cannot agree. An administrative body is legally far removed from a legislature. A legislative body may delegate authority to an administrative body to act within the framework or confines of a legislative enactment. Thus, the legislature may establish broad guidelines, and the details of application of these principles to specific instances may then be determined by an administrative body.

■■ However, it is legally impossible for lawmakers to delegate their function of making the law to administrative agencies. An administrative body "exercises purely statutory powers and must find within the enabling statute the authority to exercise the power it claims." (*Sibley v. Health & Hospitals' Governing Com.* (1974), 22 Ill. App. 3d 632, 634, 317 N.E.2d 642, and cases there cited.) We conclude that in enactment of the ordinance before us the city council acted in a legislative, as distinguished from an administrative, capacity.

An additional legal consideration illustrates the lack of judicial power to act upon the ordinance in question. The Illinois Constitution of 1970 provides in article II, section 1, for separation of powers:

"The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another."

This provision "is essentially the same as that of our 1870 Constitution." (*City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 173, 311 N.E.2d 146.) The doctrine of separation of powers "was not designed to achieve a complete divorce between the three

departments of a single operating government." (*City of Waukegan,* 57 Ill. 2d 170, 174.) However, as shown in *City of Waukegan* and also in *In re Estate of Barker* (1976), 63 Ill. 2d 113, 119, 345 N.E.2d 484:

> "This court has held that the doctrine was not designed to achieve a complete divorce among the three branches of government. (*People v. Reiner,* 6 Ill. 2d 337, 342.) The true meaning, in theory and in practice, of the doctrine is that the whole power of two or more of the branches of government shall not be lodged in the same hands. *City of Waukegan v. Pollution Control Board,* 57 Ill. 2d 170, 174; *Hill v. Relyea,* 34 Ill. 2d 552, 557; *Field v. People ex rel. McClernand,* 3 Ill. (2 Scam.) 79, 83."

These legal precepts comport with the statement above made. This court may invalidate a legislative enactment for constitutional or statutory reasons. But, this court is forbidden from assuming a completely legislative function. This court must act in its judicial capacity. The city council must have exclusive right to act in its legislative capacity. Neither court nor council may exercise the whole power of the other. It has been clearly pointed out that an administrative body is organized and equipped only to act in discharging administrative duties. The legislative body similarly is equipped to act and should act only in legislative matters. (See *Metro Cable Co. v. CATV of Rockford, Inc.* (7th Cir. 1975), 516 F.2d 220, 228.) These considerations make it abundantly clear that the action of the council may not be construed as a violation of due process of law.

We find nothing in the authorities cited by plaintiff to convince us to the contrary. Cases which hold municipalities must follow underlying statutory requirements before an amendment would be upheld are not applicable here. They amount simply to a holding that municipal zoning ordinances must be enacted in accordance with the limitations provided by the sovereign legislative power of the State. (*First National Bank v. Village of Skokie* (1967), 85 Ill. App. 2d 326, 229 N.E.2d 378, *appeal denied* (1967), 37 Ill. 2d 625; *Lancaster Development, Ltd. v. Village of River Forest* (1967), 84 Ill. App. 2d 395, 228 N.E.2d 526.) Plaintiff also cites and depends upon *Williams v. Washington Metropolitan Area Transit Com.* (D.C. Cir. 1968), 415 F.2d 922, *cert. denied sub nom. D.C. Transit System, Inc. v. Williams* (1969), 393 U.S. 1081, 21 L. Ed. 2d 773, 89 S. Ct. 860, and *Democratic Central Committee v. Washington Metropolitan Area Transit Com.* (D.C. Cir. 1973), 485 F.2d 786, *cert. denied sub nom. D.C. Transit System, Inc. v. Democratic Central Committee* (1974), 415 U.S. 935, 39 L. Ed. 2d 493, 94 S. Ct. 1451. These cases throw no light upon the situation before us. Both of them simply illustrate an administrative body is bound by the legal guidelines provided for it by the legislature which created it.

We conclude the first contention raised by plaintiff cannot justify action by this court to invalidate or rescind the ordinance. We have no power in this regard. Legislation of this type must necessarily be corrected by action of the legislative body which adopted it. It may well be that the newly amended ordinance above described is a step in the right direction. However, it is far beyond our legal powers to attempt any revision of the situation.

## II.

Plaintiff's next contention concerns the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1977, ch. 121½, par. 261 *et seq.*). The Act declares unlawful the following:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been mislead, deceived or damaged thereby." Ill. Rev. Stat. 1977, ch. 121½, par. 262.

In addition, the Act contains important definitions:

"The terms 'trade' and 'commerce' mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." Ill. Rev. Stat. 1977, ch. 121½, par. 261(f).

It is plaintiff's theory this enactment goes beyond the common law requirement of reliance by any plaintiff upon misrepresentations, and the statute requires only an intent to defraud by the conduct of defendant. (See *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 272-73, 361 N.E.2d 815, *appeal denied* (1977), 66 Ill. 2d 629.) Plaintiff also urges the Act authorizes private causes of action for unlawful practices. Ill. Rev. Stat. 1977, ch. 121½, par. 270a; see *Hoover v. May Department Stores Co.* (1979), 77 Ill. 2d 93, 101, 395 N.E.2d 541.

■■ The central issue here, however, is whether the facts alleged in the amended complaint are sufficient to state a cause of action under the pertinent statute. We must first note the provisions in the statute above cited which completely limit the application of the statute to "the conduct of any trade or commerce." (Ill. Rev. Stat. 1977, ch. 121½, par. 262.) Also,

as above shown, these terms have been defined to mean "advertising, offering for sale, sale, or distribution of any services and any property * * *." (Ill. Rev. Stat. 1977, ch. 121½, par. 261(f).) Assuming the defendants did deceptively mislead the city council into enactment of the ordinance in question, we cannot conclude this deception was practiced in connection with trade or commerce. The discharge of a legislative function by an elected body is far afield from that category.

It is apparent from the statute the unfair or deceptive methods there involved are limited to matters such as misrepresentation, concealment, and suppression or omission. (Ill. Rev. Stat. 1977, ch. 121½, par. 262.) In the case before us, there was no representation and no dealing whatsoever between plaintiff and any of the defendants. No representations or misrepresentations at the time plaintiff entered a taxicab or paid his fare are alleged in the amended complaint. Plaintiff simply alleges he has ridden in taxicabs and on each occasion he has paid the driver the fare indicated on the meter. Consequently, there was neither representation, nor misrepresentation, concealment or suppression between plaintiff and defendants. We cannot construe the provisions of this statute as creating a cause of action in this situation.

Finally, as defendants urge in their brief, the pertinent statute also provides (Ill. Rev. Stat. 1977, ch. 121½, par. 270b(1)):

"Nothing in this Act shall apply to:

(1) Actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States; * * *."

In the instant case, the city council draws its legislative authority from the broad grant of powers to home rule units contained in article VII, section 6, of the Illinois Constitution of 1970. Even prior to ratification of the constitution, the corporate authorities of the City had power to "license, tax, and regulate hackmen * * * cabmen * * * and all others pursuing like occupations, and may prescribe their compensation." Ill. Rev. Stat. 1977, ch. 24, par. 11—42—6.

We are dealing here simply with the city council and the business people concerning whom the regulatory and legal powers of that body are being directed. We are obliged to conclude the cited statute has no application to the case before us.

### III.

Plaintiff finally urges since defendants acted in concert in working toward a rate increase, they are liable to plaintiff under the Illinois Antitrust Act. (Ill. Rev. Stat. 1977, ch. 38, par. 60—1 *et seq.*) Plaintiff contends local operation of taxicabs does not constitute interstate commerce within the Sherman Act. (See *Evanston Cab Co. v. City of*

*Chicago* (7th Cir. 1963), 325 F.2d 907, 909.) The thrust of plaintiff's argument here is Illinois antitrust law applies because the defendants acted in concert in submitting to the city council committee the data required by the taxicab ordinance.

Initially, we note this ordinance required the council to act in considering rate increases "upon the application of the holders of not less than a majority of the licenses issued hereunder * * *" in holding hearings to determine the necessity for a fare revision. Thus, the defendants were compelled by the legal requirements of the situation to act in concert. This is not the type of situation which is or should be the target of antitrust requirements.

In determining application of the Illinois Antitrust Act, Federal decisions are important. The Illinois act requires our courts to "follow the construction given to the Federal Law by the Federal Courts" in dealing with language in the State law which is the same or similar to the Federal statute. Ill. Rev. Stat. 1977, ch. 38, par. 60—11.

In this regard, the defendants cite and rely strongly upon *Parker v. Brown* (1943), 317 U.S. 341, 87 L. Ed. 315, 63 S. Ct. 307. That case involved a California statute which authorized the establishment of programs for marketing of raisins to restrict competition and to maintain prices in distribution of the raisins. The statute provided an advisory commission, upon petition of 10 producers, after a public hearing, and upon certain economic findings, could grant petitions to establish a plan within a zone. Thereafter, a program committee was to be selected from nominees chosen mainly by qualified producers. The committee was to formulate the program and the commission was authorized to approve it. If a specified percentage of producers then consented, the program was considered instituted.

The Supreme Court held this procedure did not violate the Sherman Act. Uniformity of prices was not attained by the concerted conduct of private individuals but by the legitimate public policy of the State as expressed in its duly enacted legislation. In our opinion, the same reasoning applies to the case at bar. These defendants have acted together not by virtue of their own private scheme but solely because of the legitimate requirements of the City ordinance.

In *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.* (1961), 365 U.S. 127, 5 L. Ed. 2d 464, 81 S. Ct. 523, the Supreme Court was concerned with a combination of business entities seeking to influence legislation by a publicity campaign. The court held the Sherman Act was not intended to bar concerted action of this kind even though the resulting official action damaged other competitors. Along the same lines is *United Mine Workers of America v. Pennington* (1965), 381 U.S. 657, 14 L. Ed. 2d 626, 85 S. Ct. 1585. There, the Supreme Court reached the same

result in dealing with a joint effort to influence the conduct of lawmakers. We find these authorities most persuasive. They require the conclusion plaintiff's complaint failed to allege an Illinois antitrust violation.

Plaintiff relies upon *Cantor v. Detroit Edison Co.* (1976), 428 U.S. 579, 49 L. Ed. 2d 1141, 96 S. Ct. 3110. That case dealt with a situation concerning distribution of light bulbs by a private electrical utility which could not distribute them without the approval of the Michigan Public Service Commission. The situation there presented is far different from the case before us. As the Supreme Court there pointed out, the distribution of electric light bulbs in the State of Michigan was completely unregulated. In the case before us, taxicab fares are entirely within the regulatory powers of the city of Chicago and defendants were obliged to act in accordance with the requirement of the municipal regulations.

Plaintiff urges the trial court denied him leave to file a further amended complaint. Since no proposed amendment was ever tendered to the trial judge, he did not err in denying any general request plaintiff may have made in this regard. *Flannery v. Marathon Oil Co.* (1979), 75 Ill. App. 3d 690, 694, 394 N.E.2d 706.

We conclude the amended complaint of plaintiff failed to state a cause of action and was properly dismissed by the trial judge. The order appealed from is therefore affirmed.

Order affirmed.

McGLOON and CAMPBELL, JJ., concur.